UNITED STATES of America, Appellee,

v.

Eugene Robert WALLACH,
Defendant–Appellant.

No. 176, Docket 92–1221.

United States Court of Appeals,
Second Circuit.

Argued Aug. 31, 1992.

Decided Nov. 9, 1992.

Robert H. Bork, Washington, D.C. (Dennis P. Riordan, Riordan & Rosenthal, San Francisco, Cal., and Robert J. Giuffra, Jr., New York City, on the brief), for defendant-appellant.

Baruch Weiss, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., Elliott B. Jacobson, Jeffrey B. Sklaroff, Andrew C. McCarthy, Asst. U.S. Attys., on the brief), for appellee.

Before: FEINBERG, NEWMAN, and CARDAMONE, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This interlocutory appeal presents a double jeopardy objection to retrial of a criminal case in the aftermath of this Court's reversal of a conviction on the ground that the prosecution should have known that a Government witness's trial testimony was false. *See United States v. Wallach,* 935 F.2d 445 (2d Cir.1991) ("*Wallach I*"). Eugene Robert Wallach appeals from the March 31, 1992, order of the District Court for the Southern District of New York (Richard Owen, Judge) denying his motion to dismiss charges arising out of the affairs of the Wedtech Corporation. 788 F.Supp. 739. He raises a double jeopardy claim and renews some challenges to the sufficiency of the evidence and some related claims not adjudicated on the prior appeal. We reject all of the current and renewed contentions that are alleged to bar retrial and affirm.

## Background

After a four month jury trial in 1989, Wallach was convicted on four counts: conducting the affairs of Wedtech through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c) (1988), two counts of defrauding Wedtech of funds ($125,000 and $300,000) subsequently transported in interstate commerce, in violation of 18 U.S.C. § 2314 (1988), and conspiracy to violate the federal conflict of interest statute, 18 U.S.C. § 203 (1988), and to defraud the United States, in violation of 18 U.S.C. § 371 (1988). Wallach's two co-defendants were also convicted. Wallach's sentence included a six year prison term. The details of the offenses are fully set forth in *Wallach I,* and the background of the broader Wedtech violations is set forth in *United States v. Biaggi,* 909 F.2d 662, 670–75 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991).

At trial, significant testimony adverse to Wallach was given by Anthony Guariglia, formerly a senior officer of Wedtech. In the course of his direct testimony, Guariglia testified that he had stopped his compulsive gambling in the summer of 1988 and had not gambled in the interval from that time to the time of the trial in June 1989. On cross-examination, Guariglia admitted that he had signed gambling markers totaling $65,000 at the Tropicana, an Atlantic

City casino, in September and October of 1988. On redirect examination, he repeated his denial of any gambling since the summer of 1988 and endeavored to explain the two episodes concerning his signing of markers. With regard to $15,000 of markers drawn in September, he claimed that he had drawn the markers and cashed in the chips to pay off previous markers that he believed he owed and then had put the cash in his pocket when he learned that no markers were outstanding. With regard to $50,000 of markers drawn in October, he claimed that he had obtained $50,000 worth of chips and had given them to a friend, Marshall Koplitz. Prior to eliciting Guariglia's redirect testimony, the Government interviewed Koplitz and another person, both of whom corroborated Guariglia's explanations.

After Wallach's conviction, the Government obtained evidence, independent of the Tropicana markers, that Guariglia had gambled in Puerto Rico in November 1988. The Government subsequently indicted and convicted Guariglia of perjury based on his false denial of gambling during the *Wallach* trial. *See United States v. Guariglia*, 962 F.2d 160 (2d Cir.1992). The revelations of Guariglia's Puerto Rico gambling precipitated a new trial motion by Wallach and his co-defendants. Judge Owen denied the motion, ruling that there was no evidence that the Government was aware of Guariglia's perjury at the time of Wallach's trial.

This Court reversed the conviction of Wallach and his co-defendants on the ground that the Government "should have known" that Guariglia was committing perjury in claiming to have ceased gambling. *Wallach I*, 935 F.2d at 457. Focusing only on the Tropicana markers, we expressed a "fear" that "the prosecutors *may* have consciously avoided recognizing the obvious—that is, that Guariglia was not telling the truth." *Id.* (emphasis added). We reversed, applying the standard that where the prosecution "knew or should have known of the perjury," the conviction must be set aside " 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' "

*Id.* at 456 (quoting *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976)). Alternatively, we ruled that even if the Government had no knowledge of the perjury, reversal was warranted under the standard that where the Government is unaware of a witness's perjury, the conviction must be set aside "if the testimony was material and 'the court [is left] with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted.' " *Id.* (quoting *Sanders v. Sullivan*, 863 F.2d 218, 226 (2d Cir.1988)). From the opinion in *Wallach I*, it is evident that the prior panel was not applying the *Sanders* "but for" test in its traditional sense of meaning that, without the false testimony, a conviction would most likely not have resulted. Guariglia's denial of gambling did not implicate Wallach at all, and had he never denied his prior gambling, it is highly unlikely that his gambling, as distinguished from his false testimony denying it, would have had any effect on the jury's consideration of Wallach's guilt. The prior panel's point was that a jury, aware of the falsity of Guariglia's sworn denial of gambling, would likely have disbelieved his accusations against Wallach, and disbelief of those allegations would likely have left the jury with other evidence unlikely to have persuaded it beyond a reasonable doubt of Wallach's guilt. As the Court said, "[H]ad the jury been aware of Guariglia's perjury it probably would have acquitted the defendants." *Wallach I*, 935 F.2d at 458.

After the convictions were reversed, the Government agreed to a dismissal of the RICO counts against Wallach and his co-defendants. The two co-defendants each pled guilty to one of the charges remaining against them. Wallach, facing retrial on the two stolen property counts and the count charging conspiracy to violate the conflict of interest statute, moved to dismiss these charges on double jeopardy grounds. Judge Owen denied the motion as "frivolous." This appeal followed.

### Discussion

Both sides spend considerable portions of their papers jousting over whether the dou-

ble jeopardy objection to Wallach's retrial is available for our consideration. Rather than grapple with all of the contentions concerning the significance, if any, of (a) Wallach's failure to move for a mistrial after Guariglia's testimony, (b) his failure to assert the double jeopardy objection on the prior appeal, (c) this Court's mandate directing a new trial, and (d) Wallach's failure to seek further review of this Court's prior decision, we prefer to assume, for purposes of this appeal, that the double jeopardy objection is properly before us and resolve the issue on its merits.

I. Does double jeopardy protection bar retrial because of prosecution misconduct?

Both sides recognize that a defendant who secures a reversal of his conviction because of a defect in the proceedings leading to conviction normally obtains from the Double Jeopardy Clause no insulation against retrial. *See Burks v. United States,* 437 U.S. 1, 14–16, 98 S.Ct. 2141, 2148–50, 57 L.Ed.2d 1 (1978). The principal exception is a reversal for insufficiency of the evidence. *Id.* at 16–17, 98 S.Ct. at 2149–50. Both sides also recognize that a further exception arises in some circumstances involving misconduct by a prosecutor, but they differ sharply on the scope of that further exception. Their differences arise from disagreement as to the teaching of *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982).

*Kennedy* concerned a state court criminal trial that ended when a defendant's motion for a mistrial was granted. The defendant sought the mistrial after the prosecutor had asked a witness a prejudicially improper question. The trial court then denied a motion to preclude retrial on double jeopardy grounds, after finding that the prosecutor had not intended to precipitate the mistrial. The state appellate court reversed, concluding that retrial was barred, regardless of the prosecutor's intent, simply because the prosecutor's misconduct constituted "overreaching." *See id.* at 670, 102 S.Ct. at 2086.

Reviewing this ruling, the Supreme Court acknowledged that its prior decisions had created some ambiguity as to the standard to be applied in assessing a prosecutor's misconduct for purposes of determining whether, under the Double Jeopardy Clause, a mistrial precipitated by such misconduct precluded a retrial. *See id.* at 677–79, 102 S.Ct. at 2090–92. Resolving the ambiguity, the Court rejected the idea that misconduct alone barred a retrial and ruled instead that the circumstances in which the Clause would bar a retrial "are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." *Id.* at 679, 102 S.Ct. at 2091–92; *accord United States v. Dinitz,* 424 U.S. 600, 611, 96 S.Ct. 1075, 1081–82, 47 L.Ed.2d 267 (1976).

The Government reads *Kennedy* as limited to its context of a criminal trial that ends with the granting of a defendant's motion for a mistrial. In the Government's view, *Kennedy* affords Wallach no benefit because he did not even move for a mistrial, much less obtain one; indeed, the trial ended, not with a mistrial, but with a conviction. On the other hand, Wallach reads *Kennedy* without the limitation of the mistrial context and extracts from it a rule of more general application: "The Supreme Court's rationale is that the Double Jeopardy Clause bars a second prosecution when the prosecutor engages in serious misconduct with the intention of preventing an acquittal." Brief for Appellant at 15.

We have some doubt that the Supreme Court expected its carefully worded statement of the rule in *Kennedy* to be extended beyond the context of a trial that ends with the granting of a defendant's motion for a mistrial. *See Kennedy,* 456 U.S. at 676, 102 S.Ct. at 2088–89 (stating, in dictum, that the Double Jeopardy Clause does not bar retrial of defendant whose conviction is reversed on appeal on the same grounds as those sought in an unsuccessful mistrial motion). The decision proceeds from the premise that "the Double Jeopardy Clause affords a criminal defendant a 'valued right to have his trial completed by a particular tribunal.'" *Id.* at 671–72, 102

S.Ct. at 2086–87 (quoting *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)). Obviously a defendant, like Wallach, whose trial ends with a conviction has suffered no impairment of that valued right.

Yet there is force to Wallach's argument for some sort of extension. Since *Kennedy* bars a retrial on jeopardy grounds where the prosecutor engages in misconduct for the purpose of goading the defendant into making a successful mistrial motion that denies the defendant the opportunity to win an acquittal, the Supreme Court might think that the Double Jeopardy Clause protects a defendant from retrial in some other circumstances where prosecutorial misconduct is undertaken with the intention of denying the defendant an opportunity to win an acquittal.

But an extension of *Kennedy* beyond the mistrial context cannot be as broad as the rule for which Wallach contends. Every action of a prosecutor in the course of a trial is taken "with the intention of preventing an acquittal." *See Kennedy,* 456 U.S. at 674, 102 S.Ct. at 2088–89 ("Every act on the part of a rational prosecutor during a trial is designed to 'prejudice' the defendant by placing before the judge or jury evidence leading to a finding of his guilt."). If the rationale of *Kennedy* were as broad as claimed by Wallach, the Double Jeopardy Clause would bar retrial of every defendant whose conviction is reversed because of intentional misconduct on the part of a prosecutor. For example, knowing use of perjured testimony that "could have affected the judgment of the jury" would result not only in reversal of a conviction, *see United States v. Agurs,* 427 U.S. at 103, 96 S.Ct. at 2397–98; *Napue v. Illinois,* 360 U.S. 264, 272, 79 S.Ct. 1173, 1178–79, 3 L.Ed.2d 1217 (1959), but also in a bar to retrial on jeopardy grounds. The Supreme Court could not possibly have mandated that result in *Kennedy.* Such a result would obliterate the precise distinction drawn in *Kennedy* between misconduct that merely results in a mistrial and misconduct undertaken for the specific purpose of provoking a mistrial. Only the latter circumstance creates a bar to retrial.

■ If any extension of *Kennedy* beyond the mistrial context is warranted, it would be a bar to retrial only where the misconduct of the prosecutor is undertaken, not simply to prevent an acquittal, but to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct. If jeopardy bars a retrial where a prosecutor commits an act of misconduct with the intention of provoking a mistrial motion by the defendant, there is a plausible argument that the same result should obtain where he does so with the intent to avoid an acquittal he then believes is likely. The prosecutor who acts with the intention of goading the defendant into making a mistrial motion presumably does so because he believes that completion of the trial will likely result in an acquittal. That aspect of the *Kennedy* rationale suggests precluding retrial where a prosecutor apprehends an acquittal and, instead of provoking a mistrial, avoids the acquittal by an act of deliberate misconduct. Indeed, if *Kennedy* is not extended to this limited degree, a prosecutor apprehending an acquittal encounters the jeopardy bar to retrial when he engages in misconduct of sufficient visibility to precipitate a mistrial motion, but not when he fends off the anticipated acquittal by misconduct of which the defendant is unaware until after the verdict. There is no justification for that distinction.

Applying this limited extension of *Kennedy* to Wallach's case, however, avails him nothing. In the first place, it is entirely unrealistic to think that the prosecution at Wallach's trial apprehended an acquittal. The evidence against Wallach and his co-defendants was quite strong. The prosecution had every reason to anticipate a conviction. Though not explicitly shouldering a burden to persuade us that the prosecution apprehended an acquittal, Wallach relies on the prior panel's conclusion that "had the jury been aware of Guariglia's perjury it probably would have acquitted the defendants." *Wallach I,* 935 F.2d at 458. We are entirely confident that this conclusion, reached by the prior panel after careful consideration of the entire record in

the course of appellate review, indeed only after further consideration following an initial decision, *see United States v. Wallach*, No. 89–1544 (2d Cir. Aug. 13, 1991) (Order amending opinion), was not in the mind of the prosecutors at any time during Wallach's trial, and would not have been in their minds, even if they had thought that Guariglia's denial of gambling was false.

Moreover, this is not a case involving deliberate misconduct that might, if an acquittal were apprehended, invoke a double jeopardy bar to retrial. The prosecutors certainly did not malevolently elicit Guariglia's initial contention that he had ceased gambling. That assertion added nothing to the proof against Wallach or his co-defendants. Wallach does not contend otherwise. Instead, his point is that once the cross-examination put in issue the credibility of Guariglia's assertion, the prosecutors must have known that Guariglia was lying, yet they permitted his assertion to stand and sought to rehabilitate their witness by eliciting from him false explanations for his activities at the Tropicana casino.

On the prior appeal, the panel concluded, at most, that the prosecutors "should have known" of Guariglia's perjury. *Wallach I*, 935 F.2d at 457. There was no determination that the prosecutors had actual knowledge. Even the suggestion of possible conscious avoidance of knowledge was advanced most tentatively: "We *fear* that ... the prosecutors *may have* consciously avoided recognizing ... that Guariglia was not telling the truth." *Id.* (emphasis added). Moreover, in denying the defendants' motion for a new trial, made after disclosure of Guariglia's gambling in Puerto Rico, Judge Owen expressly found that there was no evidence that the prosecution had any knowledge of the perjury. *See also id.* at 473 (Altimari, J., concurring). Wallach strenuously invites us to make a contrary finding based on our own review of the record. Having reviewed the record, we conclude that Judge Owen's finding should not be disturbed.

Thus, the factual predicate for extending *Kennedy* to bar Wallach's retrial—deliberate prosecutorial misconduct undertaken to avoid an acquittal that the prosecutors believed was likely in the absence of their misconduct—is totally lacking.

II. Does double jeopardy protection bar retrial because of insufficiency of the evidence?

■ Appellant also contends that retrial is barred because the evidence at the first trial was insufficient to support guilty verdicts on the counts on which he now faces retrial. A reversal on the basis of insufficiency of evidence, like an acquittal, bars a retrial, *see Burks v. United States*, 437 U.S. at 16–17, 98 S.Ct. at 2149–50, and a reversal of a conviction on grounds other than sufficiency does not avoid the need to determine the sufficiency of the evidence before a retrial may occur, *see United States v. Bibbero*, 749 F.2d 581, 586 (9th Cir.1984), *cert. denied*, 471 U.S. 1103, 105 S.Ct. 2330, 85 L.Ed.2d 847 (1985).

In advancing his sufficiency challenge, Wallach makes two distinct and somewhat inconsistent arguments. Focusing on the case as a whole, he contends that the prior panel has already determined that the Government's evidence was insufficient by expressing the view that a jury, informed of Guariglia's perjury about his gambling, would "probably" have acquitted the defendants. Then, focusing on each of the two statutory violations that remain for retrial, he contends that the prior panel did not consider sufficiency and invites us to do so.

■ The broad challenge may be readily rejected. The prior panel, in the second of its alternate holdings, concluded that even if the prosecution was unaware of Guariglia's perjury, the convictions must be reversed because a jury with such awareness would "probably" have acquitted. That is not a ruling that the evidence presented was insufficient to permit a rational jury to find guilt beyond a reasonable doubt. Instead, it is a prediction of what the jury would have done, based on the prior panel's assessment, not of the sufficiency of the evidence, but of the *weight* of all the evidence including assumed knowledge of Guariglia's perjury about his gambling. The prior panel expressed the view that

Guariglia's perjury "interfered with the jury's ability to *weigh* his testimony." *Wallach I,* 935 F.2d at 473 (emphasis added). Wallach's first sufficiency challenge is without merit.

In considering the second sufficiency challenge, dealing with specific offenses, we are met with the parties' dispute as to whether this claim is available for our consideration on this appeal. The Government contends that the prior panel "implicitly" found the evidence sufficient, Brief for Appellee at 36, and Wallach contends that the prior panel "expressly declined" to consider the insufficiency claim, Brief for Appellant at 27. The dispute as to whether *Wallach I* adjudicated Wallach's particularized sufficiency claims arises in large part because of the oblique way in which the issues were raised on the prior appeal. No section of Wallach's brief on the prior appeal was succinctly headed, "The evidence was insufficient to support the jury's verdict." Instead, the brief mounted a series of challenges to the *theories* under which the Government sought to apply 18 U.S.C. § 2314 and 18 U.S.C. § 203 to Wallach's conduct. That approach led the prior panel to say:

> Although our decision on the perjury issue is itself a sufficient basis for disposing of these appeals, the likelihood of a new trial suggests that we should also address some of the other arguments urged by the defendants. We limit our analysis to those issues that directly challenge the validity of the indictment or the legal viability of the government's theory underlying any of the charges.

*Wallach I,* 935 F.2d at 459.[1] Clearly, the prior panel did not "expressly" decline to consider sufficiency, and its rejection of the challenge to the Government's legal theories may well have constituted an "implicit" consideration of sufficiency. But we prefer not to subject the defendant to retrial without express consideration of the sufficiency challenges that he asserts were not disposed of on the prior appeal.

■ *Section 2314 violation.* Appellant's challenge to the sufficiency of the evidence to support conviction on Counts 3 and 4, charging violations of 18 U.S.C. § 2314, is that "no evidence had been introduced that at least one Wedtech shareholder had been deceived by the allegedly fraudulent letters he sent to Wedtech." Brief for Appellant at 28. The issue thus raised, like most of those tendered in the brief on the first appeal, is not whether such evidence was presented, but whether it was required. We are satisfied that the prior panel implicitly concluded that such proof was not required, and we now so hold expressly.

The prior panel accepted Wallach's premise that section 2314 does not apply to property taken with the consent of the owner, *Wallach I,* 935 F.2d at 468 (citing *United States v. Bennett,* 665 F.2d 16, 22 (2d Cir.1981)), but nonetheless rejected Wallach's "self-theft" contention on the ground that the obtaining of property from a corporation by means of false representations is "a fraud on the corporation and its shareholders," *id.,* notwithstanding knowledge by the officers and directors of the falsity. The crime is complete when the defendant transports in interstate commerce property worth more than $5,000 that the defendant knew was obtained by fraud. *Id.* at 466 (citing *Dowling v. United States,* 473 U.S. 207, 214, 105 S.Ct. 3127, 3131–32, 87 L.Ed.2d 152 (1985)). Implicit in the prior opinion is the idea that the fraud upon the corporation is established by showing that the property was obtained by false representations made to the corporation and that any claim of "self-theft," *i.e.,* that all the shareholders consented to parting with the corporate property on the basis of the false representations, is a matter of defense. The Government was not required to present evidence from a shareholder that he was misled by the false representation.

---

**1.** The prior panel also said, in a concluding remark:

> We have considered the other arguments advanced by the defendants but choose to

address at this time only those that are likely to recur at a retrial.

*Wallach I,* 935 F.2d at 473.

*Section 203 conspiracy violation.* Wallach's sufficiency challenge to Count 5, charging a conspiracy to violate 18 U.S.C. § 203, is "(i) that the government had failed to prove an agreement between himself and the Wedtech officers that he would lobby while a full-time federal official, and (ii) that the government had failed to prove both that [former Attorney General] Edwin Meese could award defense contracts and [ (iii) ] that Wallach had agreed to lobby Meese regarding any particular category of contracts." Brief for Appellant at 28. In considering these claims, we are burdened, as was the prior panel, with the oblique way they were presented on the prior appeal. In an effort to renew his sufficiency contentions with respect to Count 5, Wallach's current brief airily refers us to specific pages of his main and reply briefs on the prior appeal. Examining those pages, we find a blend of arguments that challenge whether section 203 applies to the conduct that Wallach was alleged to have agreed to, whether the jury was properly instructed, whether the indictment was sufficiently precise, and, sandwiched in among the preceding contentions, some casual references to lack of evidence. We will endeavor to assess the sufficiency contention, to the extent that we are able to extract it.

The claim that the evidence failed to show that Wallach agreed to lobby *while* a federal official is clearly unavailing. As the prior panel expressly stated,

> [The $300,000 payment was arranged] after Wallach informed Guariglia and Moreno that he anticipated receiving an appointment to a position in the United States Department of Justice under his friend, then-Attorney General Meese. Wallach had advised Guariglia and Moreno that he wished to continue to lobby for Wedtech's interests while a full-time government officer.

*Wallach I*, 935 F.2d at 452. The testimony of Guariglia and Moreno abundantly supported these facts.

What Wallach is really contending is not that the evidence did not permit a finding that he agreed to lobby while a federal official but that the jury should have been instructed that it could convict on Count 5 only if it found that lobbying while a federal official was an essential ingredient of his agreement with the Wedtech officials. Otherwise, he contends, the jury might convict him for the lawful activity of lobbying while remaining a private citizen. With the conviction on Count 5 under the charge as given now reversed, and with this interlocutory appeal confined to double jeopardy and related sufficiency of evidence issues alleged to bar retrial, we decline to offer advice to the District Court as to how it should submit Count 5 to the jury upon retrial.

Wallach's second sufficiency challenge, as set forth on the prior appeal, is that the evidence failed to permit a finding that Meese "had a role in defense procurement." Brief for Appellant Wallach at 43, *Wallach I* (hereafter "*Wallach I* brief"). As a pure sufficiency challenge, this contention is unavailing. The evidence permitted the jury to find that, while serving as Counselor to the President, Meese had instructed his deputy to oversee Wedtech matters and had actively played a role in influencing the Secretary of Defense to award contracts to Wedtech. It was a reasonable inference that Meese would continue to assist Wedtech from his vantage point as Attorney General, a role that afforded him regular access to his fellow cabinet member, the Secretary of Defense.

■ But Wallach's challenge regarding Meese was not purely a sufficiency challenge. His contention was that "[t]he alleged conspiracy to secure defense contracts through the lobbying of Edwin Meese did not state [*sic*] a conspiracy to violate Section 203." *Wallach I* brief at 43. This argument sounds as if it is a contention that Count 5 fails to state an offense. The initial difficulty with the argument is that Count 5 is not restricted, as Wallach wants to read it, to a conspiracy to lobby Meese.[2] Count 5 charges a conspira-

---

**2.** At the prior trial, Wallach sought an instruction that would have limited the jury's consider-

ation of Count 5 to the restricted version that he contended on appeal failed to state an offense.

cy in which Wallach would receive compensation "for services WALLACH was to render personally at a time when he was to be an officer and employee of the United States in the executive branch, in relation to ... contracts ... before a department ..., namely, Wedtech's efforts to obtain federal Department of Defense manufacturing contracts." That count plainly states an offense. For example, it would permit conviction upon proof that Wallach had accepted compensation in return for his services, while a federal officer, in directly lobbying the Defense Department for Wedtech. The real issue that was raised concerning Meese is whether evidence that Wallach would lobby Meese to lobby the Defense Department suffices to establish a section 203 violation. Since the prior panel did not decide that issue,[3] we feel obliged to do so.

Section 203(a), as it read at the time of Wallach's offense, punishes receipt of compensation, while a federal officer, "for *any services* rendered or to be rendered either by himself or another ... *in relation to* any ... contract ... in which the United States is a party ... before any department...." 18 U.S.C. § 203(a) (emphasis added).[4] We ruled in *United States v. Myers*, 692 F.2d 823, 853–58 (2d Cir.1982), *cert. denied*, 461 U.S. 961, 103 S.Ct. 2437, 2438, 77 L.Ed.2d 1322 (1983), that the proscribed services must be rendered before the federal forum in question, declining the Government's invitation to read the statute more broadly to cover the mere rendering of advice as to matters pending before federal agencies. But neither *Myers* nor any other decision of which we are aware requires that the compensated services of a federal official must involve his direct rendering of service before the department where the matter is pending. We are con-

fident that Congress wished to punish a federal official who accepts compensation not only for services rendered directly before the department where a contract decision is pending but also for services rendered indirectly through another federal official. The statute explicitly applies to services to be rendered "either by himself or another." While the latter term most precisely covers the situation where an officer sends an emissary to inform the agency of the officer's own interest in the matter, it lends considerable support to our construction that the statute as a whole also applies to a two-step arrangement in which an officer, for compensation, personally influences another officer to influence the department before which a contract is pending. Since it was reasonably foreseeable that Meese, as Attorney General, would endeavor to influence the Department of Defense on behalf of Wedtech, Wallach's acceptance of compensation to act, after Wallach became a federal official, to influence Meese to do so, is punishable under section 203(a).

■ Wallach's third challenge to Count 5 requires little discussion. As alleged on the prior appeal, his point is that "the government plainly failed to identify the category of government contracts with sufficient particularity." *Wallach I* brief at 45. This is not a sufficiency challenge, but, like the previous claim, it is a legal objection not adjudicated on the prior appeal. In any event, it is unavailing.

Section 203(a) requires that the compensated services be rendered in relation to a "particular matter." *See United States v. Williams*, 705 F.2d 603, 622 (2d Cir.), *cert. denied*, 464 U.S. 1007, 104 S.Ct. 524–25, 78 L.Ed.2d 708 (1983). We made clear in *Williams*, however, that section 203(a)

One of his proposed instructions would have required the jury to find that the services for which Wallach received compensation "would be in relation to particular matters *before Mr. Meese* in his capacity as Attorney General in connection with Wedtech efforts to procure defense contracts." Joint Appendix at 506, *Wallach I* (emphasis added). This request was refused.

3. The prior panel stated explicitly, regarding the challenge to Count 5, "We limit our discussion

to Wallach's legal argument that only those individuals who actually become federal officials can be charged with conspiring to violate Section 203." *Wallach I*, 935 F.2d at 469.

4. The current version is limited to "any representational services." 18 U.S.C. § 203(a) (Supp. II 1990).

does not require "pleading or proof of a single contract identified by contract number or similar individualized detail. It is sufficient if the compensation has been received for services to be rendered with respect to a particular category of contracts." *Id.* The indictment focused on manufacturing contracts from the Department of Defense to Wedtech. Though the scope of the contracts was not quite as narrow as the "contracts for the purchase of titanium" involved in *Williams, id.,* it easily satisfied the particularity requirement of section 203(a).

We thus conclude that all of Wallach's "sufficiency" challenges and the related legal challenges to Count 5 are without merit.

### Conclusion

We conclude that the Double Jeopardy Clause does not bar a retrial on the pending charges. The order of the District Court is affirmed. The pending petitions for mandamus, seeking recusal of the District Judge and disqualification of the prosecutors, are denied.