**UNITED STATES of America**

v.

**Martin SCOTT.**

**No. 2:95CR72–08.**

United States District Court,
D. Vermont.

Feb. 9, 1998.

David J. Williams, Sleigh & Williams, St. Johnsbury, VT, for defendant.

Gary G. Shattuck, Rutland, David V. Kirby, Asst. U.S. Atty., Office of the U.S. Attorney, Burlington, VT, for U.S.

OPINION AND ORDER

SESSIONS, District Judge.

On May 29, 1997 Defendant Martin Scott filed a Motion to Dismiss Indictment, based

upon a double jeopardy claim. Scott contends that the evidence prompting the Court to declare a mistrial was introduced as the result of the Government's intentional or reckless behavior, which forced Scott to seek a mistrial. The Court orally rejected Scott's claims at a hearing on October 28. Scott filed a Motion to Reconsider and for Evidentiary Hearing on November 6. The Court has reviewed relevant portions of the trial transcript, the Government's affidavit and arguments of counsel, and again denies Scott's motion.

## I. *Background*

The Government returned a superseding indictment on July 24, 1996, charging Scott and numerous other co-defendants with conspiracy to commit various drug offenses. As compared to others, Scott's alleged role in the conspiracy was relatively limited. According to the indictment, Scott participated in the off-loading of tons of hashish in the St. Lawrence Seaway in 1989 and 1991. The grand jury charged that he conspired with others to import hashish into the United States at those times and conspired to commit a violation of the Maritime Drug Law Enforcement Act. Other co-conspirators faced additional charges relating to distribution of drugs within the United States and various currency violations.

Six defendants went on trial, beginning on March 11, 1997. The trial lasted for approximately ten weeks. During the third week of trial, the Government called Michael Johnson, an unindicted co-conspirator who was cooperating with the Government in its investigation. Johnson testified for approximately five days. During the course of the direct examination, the Government engaged Johnson in the following testimony:

Q. Were you aware of any drug deals between Marty Scott and Billy Greer?

A. I was aware that it went on, but— [Objection omitted].

Q. Did you have conversations with Billy Greer about drug deals that he had with Marty Scott?

A. Yes.

Q. Can you tell the jury those conversations?

A. Just that he moved large quantities by sailboat from Jamaica to Florida; was a—is a very competent sailboat captain. (Tr. vol.13, p. 189.)

Defendant then objected to the testimony, arguing for dismissal of the charges, or, in the alternative, a mistrial. He charged the evidence was highly prejudicial and improper, that the Government knew that such evidence was coming, but chose to introduce it in a desperate effort to convict Scott.

The Court questioned the Government about its knowledge of Johnson's answer. Counsel stated that he was surprised with the answer, that he intended to bring out other evidence through his questioning, that he may have known what Johnson was referring to although he was uncertain of even that fact. (Tr. vol.13, p. 195.) According to counsel, the Government was trying to elicit sales from Greer to Scott which were in furtherance of the conspiracy. Counsel subsequently filed an affidavit with the Court indicating he had no advance knowledge of Johnson's testimony and did not intentionally attempt to elicit that evidence in order to prejudice Scott.

At trial, the Court asked Scott's counsel if he had any evidence that the Government was untruthful in its denial of knowing about the testimony. Scott's counsel indicated that he did not.

The Court ordered a mistrial as to Scott, based upon Johnson's testimony. In so doing, the Court noted that Scott's alleged role was relatively minimal. He was essentially charged with assisting the 1989 and 1991 off-loads in the St. Lawrence Seaway. The Court found that Johnson's testimony could have catapulted Scott's role, in the minds of jurors, from a minor to a major player in the conspiracy. That possibility required a mistrial. However, the Court also stated there was no evidence the testimony was elicited intentionally by the Government to prejudice Scott's rights.

Scott asks the Court to review its finding concerning the Government's lack of knowledge of the alleged Jamaica to Florida shipments, based on the complete transcript of the bench conference. The Government, al-

though it was unsure, acknowledged thinking that it knew something about what Johnson had said. The Government explained how it was attempting to elicit testimony about sales from Greer to Scott, though it may have known of sales from Scott to Greer. In response to a question from the Court as to whether the Jamaica shipments were a part of the conspiracy, the Government indicated that the Jamaica trips could have been linked to sales to Greer, although it was not certain of that fact. It was clear to the Court at that time, and it is clear to the Court upon reflection, that the Government did not intentionally elicit testimony about the Jamaica to Florida shipments and was totally surprised by Johnson's testimony.

## II. *Discussion*

Defendant's motion is based on the Double Jeopardy Clause of the Fifth Amendment, which states, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause offers a criminal defendant a " 'valued right to have his trial completed by a particular tribunal.' " *Oregon v. Kennedy,* 456 U.S. 667, 671–72, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), *quoting Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949). However, there is no "guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." *Id.* 456 U.S. at 672 (citations omitted).

The Supreme Court has ruled that where a defendant has requested and received a mistrial, the Double Jeopardy Clause does not bar retrial. *Id.* at 672–73. Even where harassment or overreaching by the prosecution justified the defendant's motion for a mistrial, a retrial is permitted. *Id.* at 675–76. The Double Jeopardy Clause only bars retrial in such cases if the prosecutorial misconduct was intended to "goad" the defendant into moving for a mistrial. *Id.* at 676.

The Second Circuit endorses the *Kennedy* exception, agreeing that "only a high-handed wrong intentionally directed against defendant's constitutional right will trigger his right not to be twice put in jeopardy for the same offense." *U.S. v. Pavloyianis,* 996 F.2d 1467, 1469 (2d Cir.1993). The Circuit has sought to extend the application of *Kennedy* to include prosecutorial misconduct undertaken "to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct." *U.S. v. Wallach,* 979 F.2d 912, 916 (2d Cir. 1992). Without this extension, the jeopardy bar will be raised when deliberate misconduct provokes a mistrial, but not when less easily perceived misconduct, also taken to avoid an acquittal, goes undetected until after the verdict. *Id.*

Since the conduct in question provoked Scott to move for a mistrial, this case fits squarely under *Kennedy* and does not require an extension of the exception. Applying *Kennedy* criteria to this case, the facts do not implicate double jeopardy protection. This case did not involve deliberate prosecutorial misconduct. The question posed to Mr. Johnson hardly appeared unusual. The Government has represented, and there is no contrary indication, that its question was designed to elicit testimony concerning Greer's drug sales to Scott, in furtherance of the conspiracy. It was not deliberately posed to bring out surprise testimony which would goad Defendant into moving for a mistrial.

In addition, there is no evidence of the Government's intent to provoke a mistrial. Defendant points to alleged inconsistencies in the Government's representations, as to what it knew about these shipments and when and where it gathered this information. The Government, however, has consistently denied knowing that Johnson was aware of Scott's shipments and sales to Greer. Furthermore, the Government had no reason to want to provoke a mistrial. The evidence, including testimony by Johnson, other witnesses, and experts, was strong enough so that the Government could have anticipated a conviction. By no means was an acquittal imminent.

The facts fail to substantiate Defendant's claim that the Government engaged in prosecutorial misconduct with the intent to provoke a mistrial. In his most recent submission (Paper 509), Defendant requested an evidentiary hearing on this matter. The

Court has presided over all of the relevant proceedings in this case and has reviewed all of the relevant transcripts, affidavits, and memoranda. An evidentiary hearing is not necessary, nor is one required. *See Pavloyianis,* 996 F.2d at 1475.

III. *Conclusion*

Based on the foregoing analysis, Defendant's Motion to Dismiss Indictment (Paper 416) is hereby DENIED.