[Cite as *State v. Barnum*, 2026-Ohio-2384.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals No. F-25-010 |
| Appellee | |
| | Trial Court No. 23 CR 000043 |
| v. | |
| Baylor L. Barnum | **DECISION AND JUDGMENT** |
| Appellant | Decided: June 23, 2026 |

* * * * *

Paul H. Kennedy, Assistant Prosecuting Attorney, for appellee.

Michael H. Stahl, and
Michael G. Aird, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} In this interlocutory appeal, appellant, Baylor Barnum, appeals the November 12, 2025 judgment of the Fulton County Court of Common Pleas denying his motion to dismiss his criminal case based on double jeopardy. For the following reasons, we affirm.

## I. Background and Facts

{¶ 2} This case arose from an October 2022 car accident outside of Delta. Barnum, who was driving a Mitsubishi Eclipse Cross, ran a stop sign, colliding with the

vehicle that J.T. was driving. J.T.'s seven-year-old son, K.T., was a passenger in her vehicle. J.T. and K.T. both sustained serious injuries in the crash. K.T. died from his injuries within days of the accident.

{¶ 3} Barnum was indicted on one count each of vehicular manslaughter in violation of R.C. 2903.06(A)(4), a second-degree misdemeanor (count 1); aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a), a third-degree felony (count 2); vehicular assault in violation of R.C. 2903.08(A)(2)(b), a fourth-degree felony (count 3); aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a), second-degree felony (count 4); and aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a), a third-degree felony (count 5).

{¶ 4} Barnum's case was tried to a jury. At trial, several witnesses testified that Barnum reported that his brakes failed at the time of the accident, and the State played video of Barnum telling first responders that his brakes had failed. *State v. Barnum*, 2025-Ohio-1105, ¶ 17, 25, 28, 31, 34, 52 (6th Dist.).

{¶ 5} Ohio State Highway Patrol trooper Kyle Baxter, a crash reconstructionist, testified about his investigation of the accident. Based on data that Baxter obtained from the Eclipse, he determined that "it appear[ed] that the brakes were working . . . ." He could not recall a case that he was involved in "where brakes on a newer vehicle have failed to the point that someone can't bring their vehicle to a stop[.]" He admitted that he did not examine the Eclipse's brakes because there was "no indication at the scene or . . . evidence that suggest[ed] that there might have been a problem with any of the vehicle features." Signs of brake malfunction could include data from the airbag control module

2.

showing that the antilock brakes were activated, but without marks at the scene showing that the vehicle was braking, such as "skips in tire marks [or] a lengthy tire mark that didn't arrive at the vehicle at final rest . . . ." When defense counsel asked Baxter if he was aware that Barnum had reported that his brakes had failed, Baxter responded, "I don't recall at the time, but I don't believe—when I was at the tow lot assessing the vehicles I wasn't aware of that statement."

{¶ 6} After hearing the evidence, the jury found Barnum guilty of counts 1, 2, and 3, and not guilty of counts 4 and 5. The trial court sentenced Barnum to an aggregate prison term of 78 months.

{¶ 7} Barnum appealed. On appeal, we reversed Barnum's convictions and remanded his case for a new trial because the trial court failed to strike for cause two jurors who had close, ongoing personal relationships with J.T. and K.T.'s family. *Barnum* at ¶ 68. We also found that Barnum's convictions were supported by sufficient evidence. *Id.* at ¶ 81-83. In reaching that conclusion, we stated,

> Moreover, Baxter's failure to examine the Eclipse's brakes . . . do[es] not change our analysis. Baxter testified that he had not seen a case in which "the brakes on a newer vehicle have failed to the point that someone can't bring their vehicle to a stop[,]" the Eclipse's airbag control module data did not indicate an issue with the brakes, and there was nothing at the scene of the crash to indicate brake failure. Beyond that, the Eclipse's data showed that, although Barnum was initially braking, he hit the accelerator and had the pedal nearly to the floor just seconds before the accident.

(Second brackets in original.) *Id.* at ¶ 82.

{¶ 8} On remand, Barnum filed numerous motions, including a motion to dismiss based on double jeopardy. In his motion to dismiss, Barnum alleged that he had

3.

obtained, by subpoena after his trial, emails showing that Baxter knew or should have known about Barnum's claim that his brakes had failed at the time that Baxter inspected the Eclipse, which proved that Baxter's testimony that he was not aware of Barnum's claims that his brakes had failed was false. Barnum also alleged that the emails showed that Baxter's testimony that he had no reason, based on the data, to analyze the brakes was false because in another case Baxter discusses in the emails, he testified that he always checks safecar.gov for any recalls on cars involved in accidents he investigates and the website shows several complaints about (but no recalls of) the Eclipse Cross's brakes. Finally, Barnum alleged that the issue of the brakes was "crucial" to his defense and the jury's evaluation of the case, and, despite the State's failure to investigate those claims, in closing arguments, the prosecutor "without evidence, accused Mr. Barnum of lying about the brakes[.]"

{¶ 9} Regarding his first allegation, Barnum said that one of the emails he had received post-trial contained the statement, "[t]he at fault advised of potential brake issue with his vehicle." He claimed that the prosecutor had not given him this email in discovery, "indicating an ongoing deprivation of rights constituting outrageous government conduct."

{¶ 10} Regarding his second allegation, Barnum claimed that Baxter's testimony that the data did not indicate any reason to analyze the brakes was also false because safecar.gov included three complaints (not open recalls) about the Eclipse Cross from 2018. Because this data exists and Baxter apparently ignored it, Barnum "is very concerned that a more thorough investigation was not conducted." More specifically,

4.

Barnum "is concerned that [Baxter's] investigation either avoided investigating the brake issue, or that the brake issue WAS investigated, and the results of that investigation are exculpatory." Barnum also had concerns that other evidence was being withheld from him because his investigator had received a response to her public records request in October 2024 indicating that emails regarding this accident were no longer available due to the OSHP record-retention schedule, but emails related to the accident had recently been produced to him—nearly a year later—in response to a subpoena.

{¶ 11} Finally, regarding his third allegation, Barnum claimed that the prosecutor's statements in closing arguments about Barnum's brakes (which he does not quote in his motion) "are egregious and go far beyond simply misconduct but instead encompass a designed deprivation of rights that is ongoing." He argued that the State's conduct of "continu[ing] to obfuscate a fair adjudication of this case" was so outrageous that the case should be dismissed under the Due Process Clauses of the United States and Ohio Constitutions. He also argued that double jeopardy concerns were implicated because our sufficiency-of-the-evidence analysis in *Barnum* was "infected with the state's ongoing malfeasance." Although he acknowledged that "ordinarily, under current caselaw . . . , double jeopardy under the United States Constitution only applies where a prosecutor 'goads' a defendant into seeking a mistrial[,]" he argued that double jeopardy should apply in the case of outrageous government conduct. He also contended that the Ohio Constitution offers double jeopardy protection but admitted that "Ohio does not appear to have ruled on this issue with an independent analysis of the Ohio Constitution." He urged the trial court to adopt the double jeopardy limit from New Mexico, which

5.

looks at whether there was "improper official conduct" rather than simply looking at whether there was prosecutorial misconduct.

{¶ 12} In its response to Barnum's motion to dismiss, the State argued that Baxter's testimony when asked on cross-examination at trial if he was aware that Barnum had reported that his brakes had failed was not knowingly false and misleading. Next, it pointed out that Baxter's report specifically stated that he looked up Barnum's model of car on safecar.gov to check for open, unrepaired recalls and found none. Finally, the State argued that its comments during closing argument did not prejudice Barnum and noted that Barnum "fail[ed] to cite any caselaw that stands for the proposition that the Double Jeopardy clause prohibits a retrial based upon comments made by a prosecutor that do not result in a mistrial."

{¶ 13} On September 26, 2025, the trial court set a motion hearing for November 21, 2025. The hearing notice did not specify which of the numerous pending motions would be heard but did say that the hearing was set for "all afternoon." Despite the impending hearing, on November 12, 2025—nine days before the scheduled hearing— the trial court issued decisions on several of Barnum's pending motions, including his motion to dismiss.

{¶ 14} In its decision on the motion to dismiss, the trial court first found that the state's conduct in failing to provide the emails between two OSHP troopers regarding Barnum's claim of brake failure was not so egregious as to amount to a violation of Barnum's substantive due process rights. First, it determined that the emails were not exculpatory per se because they would have been used to challenge Baxter's credibility,

6.

not to prove a defense, and were not outcome determinative. Next, the court noted that Barnum was aware of the evidence of his brake failure and the identity of the OSHP witnesses before trial and "[t]he existence of emails about the possibility of brake [failure] cannot be considered a surprise to [Barnum] since he was the source of the information even though not aware of the emails." The court reiterated that "the use of emails to challenge the witnesses' testimony is not sufficient reason to dismiss the charges." Additionally, the court found that the "nondisclosure of emails appears inadvertent in view of the equivocating testimony by Tpr. Baxter about whether he was aware of brake failure as a mitigating fact." Finally on this point, the court noted that "the subject of brake failure could also have been presented during [Barnum's] case by his own testimony and/or his own expert witnesses," and the State did not have a duty under Crim.R. 16 to prepare Barnum's case for him.

{¶ 15} The court went on to determine that Barnum's allegations of "intentional misconduct, nefarious intent and bad faith" were not supported by the record. As an example, the court pointed out that "though the emails were destroyed by the [OSHP] Central Records, Defendant still received them from another [OSHP] source" and "further subpoenas provided additional responses from [OSHP] thereby mitigating against claims of collusion to deny [Barnum] his rights to substantive due process."

{¶ 16} Finally, the court found unpersuasive Barnum's argument that the State's failure to disclose the emails allowed it to argue in closing that Barnum had fabricated his claims of brake failure. The court determined that "[t]his argument rings hollow because the existence of the emails still leaves open the possibility that [Barnum's] statement

7.

within one day after the collision about brake failure was a fabrication or otherwise erroneous. The emails neither prove or [sic] disprove the veracity of [Barnum's] statement . . . ." It also found that any error in the closing argument was not egregious.

For all of those reasons, the trial court denied Barnum's motion to dismiss.

Barnum now appeals, raising three assignments of error:

> ASSIGNMENT OF ERROR 1: The trial court erred in failing to address the constitutional claims made in Appellant's motion to dismiss[.]

> ASSIGNMENT OF ERROR 2: The trial court erred in ruling on Appellant's motion to dismiss without holding a hearing.

> ASSIGNMENT OF ERROR 3: Even without a hearing, the ongoing nature of the overreach and misconduct in this case precludes further prosecution under the Ohio and United States Constitutions' bar on double jeopardy[.]

## II. Law and Analysis

### A. The trial court properly denied Barnum's motion to dismiss.

{¶ 17} In his first assignment of error, Barnum argues that the trial court erred by denying his motion to dismiss.[1] Barnum appears to argue that the Ohio Constitution provides more robust double jeopardy protections than the United States Constitution, and it protects him from retrial in this case because the State's misconduct prevented him from being acquitted by the jury in his first trial. The State responds that a defendant's double jeopardy rights are not violated when he is retried after his conviction is reversed on appeal due to trial error, which is precisely what happened here.

---

[1] Although Barnum's assignment of error is couched in terms of the trial court's failure to address the constitutional claims in his motion to dismiss, Barnum's arguments all relate to the court's denial of the motion.

8.

{¶ 18} We review de novo the trial court's denial of a motion to dismiss an indictment on double jeopardy grounds. *State v. Anderson*, 2016-Ohio-5791, ¶ 20.

{¶ 19} To support his argument, Barnum cites to *U.S. v. Wallach*, 979 F.2d 912 (2d Cir. 1992). In *Wallach*, the Second Circuit stated that there might be a circumstance under which the U.S. Supreme Court's rule from *Oregon v. Kennedy*, 456 U.S. 667, 679 (1982), that double jeopardy bars retrial following a mistrial when "the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial" could be extended. Specifically, after expressing "some doubt that the Supreme Court expected its carefully worded statement of the rule in *Kennedy* to be extended beyond the context of a trial that ends with the granting of a defendant's motion for a mistrial[,]" the *Wallach* court speculated that "the Supreme Court might think that the Double Jeopardy Clause protects a defendant from retrial in some other circumstances where prosecutorial misconduct is undertaken with the intention of denying the defendant an opportunity to win an acquittal[,]" which led the court to surmise that "[i]f any extension of *Kennedy* beyond the mistrial context is warranted, it would be a bar to retrial only where the misconduct of the prosecutor is undertaken, not simply to prevent an acquittal, but to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct." *Wallach* at 915-916. The Second Circuit went on to find that "[a]pplying this limited extension of *Kennedy* to Wallach's case, however, avails him nothing"—i.e., the rule did not apply to the case because there was no evidence that the prosecutor believed an acquittal was likely at the time of the misconduct. *Id.* at 916-917.

9.

{¶ 20} Barnum urges us to adopt the *Wallach* test as our own. We decline for two reasons. First, to the extent that Barnum is arguing that the Ohio Constitution provides greater double jeopardy protections than the United States Constitution, and the *Wallach* test is covered by the Ohio Constitution, we reject that argument because the Ohio Supreme Court has held that the protections offered by the state and federal Double Jeopardy Clauses are coextensive. *Anderson*, 2016-Ohio-5791, at ¶ 31, citing *State v. Brewer*, 2009-Ohio-593, ¶ 14, and *State v. Martello*, 2002-Ohio-6661, ¶ 7.

{¶ 21} Second, the Ohio Supreme Court has already rejected *Wallach*. In *State v. Keenan*, 81 Ohio St.3d 133, 141 (1998), the appellant argued that his retrial was barred by double jeopardy because the Supreme Court had reversed his original conviction on grounds of prosecutorial misconduct. After discussing the general rule that a successful appeal of a conviction precludes a subsequent plea of double jeopardy, the court noted that *Kennedy* provided a narrow exception to the rule in cases where the prosecutor's misconduct goads the defendant into seeking a mistrial. *Id.* It also noted, citing *Wallach*, that "[c]ertain courts have extended *Kennedy* to bar retrial after an *appellate reversal* based on misconduct calculated or intended to prevent a likely acquittal, even though no mistrial was declared." (Emphasis in original.) *Id.* The court went on to state, "[h]owever, *we have twice declined to adopt this exception to the general rule*." (Emphasis added.) *Id.* It pointed out that in a case "involving the gravest prosecutorial misconduct" it "flatly state[d]" in the syllabus that "'[r]etrial for the same offense after reversal of a prior conviction on appeal does not constitute a violation of the constitutional provision prohibiting double jeopardy.'" *Id.*, quoting *State v. Liberatore*, 10.

69 Ohio St.2d 583 (1982), paragraph two of the syllabus. It also pointed to a second case in which it found *Kennedy* inapplicable because the prosecutorial misconduct was not calculated to goad the defendant into seeking a mistrial and because the retrial was a result of reversal on appeal. *Id.*, citing *State v. Sage*, 31 Ohio St.3d 173 (1987). The court concluded, consistent with *Liberatore* and *Sage*, that it was "unsound to extend *Kennedy* to retrials after appellate reversals[,]" so double jeopardy did not bar Keenan's reprosecution on remand, despite the earlier reversal for prosecutorial misconduct. *Id.* at 141-142.

{¶ 22} Given both of these things, we reject Barnum's arguments that he is entitled to greater double jeopardy protections under the Ohio Constitution and that his reprosecution is barred because of prosecutorial misconduct during his first trial. Because neither of Barnum's arguments is persuasive, we find that the trial court properly denied his motion to dismiss. Therefore, Barnum's first assignment of error is not well-taken.

### B. The trial court did not abuse its discretion by deciding the motion to dismiss without a hearing.

{¶ 23} In his second assignment of error, Barnum argues that the trial court erred by failing to hold a hearing on his motion to dismiss. The State responds that a hearing was not necessary because "factual issues were not involved in determining the motion."

{¶ 24} Criminal pretrial motions—including motions to dismiss—are controlled by Crim.R. 12. *See* Crim.R. 12(C) ("Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without

11.

the trial of the general issue."). "The court may adjudicate a motion based upon briefs, affidavits, the proffer of testimony and exhibits, a hearing, or other appropriate means." Crim.R. 12(F). "A strict reading of Crim.R. 12(F) states that a hearing on pretrial motions is granted at the trial court's discretion. A hearing is not mandatory . . . ." *State v. Dotson*, 2018-Ohio-2481, ¶ 85 (7th Dist.). Thus, we review a trial court's decision to grant or deny a motion hearing for an abuse of discretion. Abuse of discretion means that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State ex rel. Askew v. Goldhart*, 75 Ohio St.3d 608, 610 (1996).

{¶ 25} Here, the trial court did not abuse its discretion by denying Barnum's motion without holding a hearing. The court had before it briefs from both sides that laid out their positions and, under the rule, the court was entitled to make its decision based on the briefs. *See* Crim.R. 12(F). Because the court acted within the scope of the rule, we cannot say that it abused its discretion. Therefore, Barnum's second assignment of error is not well-taken.

### C. Barnum has not presented any compelling reason for us to expand double jeopardy protections.

{¶ 26} In his final assignment of error, Barnum, relying on *Wallach*, again argues that "double jeopardy attaches where knowing material misrepresentations—or other serious misconduct—occur in concert with an evidentiary situation where, were the jury to learn the truth, there is a strong potential for an acquittal." He also repeats his argument that the Ohio Constitution provides more extensive double jeopardy protections than the United States Constitution. We discussed these arguments at length under

12.

Barnum's first assignment of error and found them unpersuasive.  Barnum's third assignment of error is not well-taken.

### III. Conclusion

{¶ 27} Based on the foregoing, the November 12, 2025 judgment of the Fulton County Court of Common Pleas is affirmed.  Barnum is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
See, also, 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.
_____
JUDGE

Myron C. Duhart, J.
_____
JUDGE

Charles E. Sulek, J.
CONCUR.
_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.