Jesse **HAMMOCK**, 86–C–0361, Petitioner,

v.

Hans **WALKER**, Respondent.

No. 99–CV–6354L(FE).

United States District Court,
W.D. New York.

Sept. 17, 2002.

Jesse Hammock, Auburn, NY, Pro se.

Gregory G. McPhee, Office of Andre R. Sobolevsky, Syracuse, NY, for Petitioner.

Robert Mastrocola, Monroe County District Attorney's Office, Rochester, NY, for Respondent.

## DECISION AND ORDER

LARIMER, Chief Judge.

### INTRODUCTION

Before the Court is the *pro se* petition of Jesse Hammock ("Hammock") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted after trial in New York Supreme Court, Monroe County of four counts of murder, 2d degree, and five counts of attempted robbery, 1st degree. He was sentenced to two consecutive indeterminate terms of twenty-five years to life on the murder convictions, and two terms of seven and one-half to fifteen years on the attempted robbery convictions, to be served concurrently with the murder sentences. The Supreme Court, Appellate Division, Fourth Department affirmed the convictions, *People v. Hammock*, 255 A.D.2d 957, 681 N.Y.S.2d 184 (4th Dept.1998), and the Court of Appeals denied leave to appeal. *People v. Hammock*, 93 N.Y.2d 899, 689 N.Y.S.2d 711, 711 N.E.2d 987 (1999). For the reasons set forth below, the § 2254 petition is dismissed.

### PROCEDURAL HISTORY

On October 12, 1984, petitioner was indicted for murder and attempted robbery in connection with an incident in which three masked men entered a bar with handguns and a sawed-off shotgun and attempted to rob the occupants. During the attempted robbery, two people were shot to death.

Hammock had been convicted of the murder at a prior trial, but his conviction was reversed by the Appellate Division, Fourth Department, based on prosecutorial misconduct. *People v. Hammock*, 182 A.D.2d 1114, 583 N.Y.S.2d 89 (4th Dept. 1992). Although the Appellate Division reversed the conviction, it affirmed the denial of a suppression motion that Hammock had made in which he claimed that the warrant had been impermissibly altered by the executing officers. The Appellate Division ruled that the trial court correctly determined that there was no basis to suppress evidence seized pursuant to the warrant. The case was then remanded for retrial.

Prior to the retrial, Hammock once again moved to suppress items obtained during execution of the search warrant. In addition, he moved to dismiss the indictment on double jeopardy grounds. Both motions were denied.

At the retrial, the People presented evidence, including inculpatory statements Hammock made to another inmate while incarcerated, physical evidence recovered from his home, which included a weapon with his hand print on it. Hammock was

once again convicted of the murder of the two victims, as well as with five counts of attempted robbery. As noted, the Appellate Division affirmed the convictions and, in its decision, the court found that the prosecutorial misconduct at the first trial did not bar a retrial on the grounds of double jeopardy and that the trial court properly denied the suppression motion. In addition, the Appellate Division denied Hammock's contention that he was denied ineffective assistance at his trial.

### HABEAS CORPUS PETITION

Petitioner's writ of habeas corpus raises three claims. First, he claims that his Fourth Amendment rights were violated in connection with the execution of the search warrant at his home. Next, he claims that the retrial violated his right not to be twice put in jeopardy, In addition, he claims that he was denied effective assistance of counsel at trial based on a single comment of his trial counsel during *voir dire* and other alleged failings during the trial. For the reasons discussed, *infra*, I find that none of these claims warrants the relief requested and, therefore, the petition must be dismissed.

### DISCUSSION

**I. Exhaustion**

■ Before examining the merits of petitioner's claims, it is necessary to consider whether petitioner exhausted state court remedies. Generally, a federal court will not entertain a habeas corpus petition from a state prisoner unless the prisoner has exhausted state court remedies. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). Exhaustion of state remedies requires presentation of the claim to the highest state court from which a decision can be obtained. *Daye v. Attorney General of the State of New York*, 696 F.2d 186, 190 n. 3 (2d Cir.1982). In addi-

tion, a petition that contains both exhausted and unexhausted claims should be dismissed so that the state courts have an opportunity to decide the unexhausted issues. *Rose v. Lundy*, 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). A petitioner must exhaust his judicial remedies with regard to each claim that he seeks to assert in a federal habeas proceeding. 28 U.S.C. § 2254(b)(1)(A).

In the instant case, respondent argues that petitioner has not exhausted each aspect of his claim that trial counsel was ineffective. Specifically, respondent argues that the claim that counsel failed to introduce exculpatory evidence was not fully exhausted. The Court notes that petitioner filed a Pro Se supplemental brief on the appeal, in which he raises ineffective assistance of counsel and argues that counsel's "blunders" deprived him of a fair trial. He cites to the statement that counsel made during *voir dire* that implied he was guilty of killing the two victims, counsel's failure to present letters from a prosecution witness that would have exonerated him, and counsel's failure to move for the trial judge's recusal. Answer, Appendix D at 15–16.

■ Respondent acknowledges that petitioner raised the claim on his direct appeal, but argues that he presented the issue in such a conclusory fashion that the issue was not adequately before the state appellate court. Further, respondent argues that the appellate court was referring to this aspect of the claim when stating "[t]o the extent that defendant's contention concerning ineffective assistance of counsel arises from matters outside the record, the facts underlying that contention should be developed through a postjudgment motion under CPL article 440...." *People v. Hammock*, 255 A.D.2d 957, 958, 681 N.Y.S.2d 184 (citations omitted), *and An-*

swer, Memorandum of Law at 1–2. Respondent avers that, because petitioner did not pursue a collateral attack regarding this claim, he has not exhausted the claim.

■ The state appellate court determined that the issue regarding the allegedly exculpatory evidence was not properly before the court on direct appeal, and directed petitioner to pursue his claim in a collateral attack. *See Lloyd v. Walker*, 771 F.Supp. 570, 574 (E.D.N.Y.1991) (Exhaustion requirement met where state collateral review had been obtained through filing of a motion to vacate judgment, pursuant to N.Y.Crim.Proc.L. § 440.10, followed by eventual appeal to New York Court of Appeals). CPL § 440.10 provides that "[a]t any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment...." N.Y. CPL § 440.10(1). Petitioner's ineffective assistance of trial counsel claims based on the failure to produce evidence should have been raised by a CPL § 440.10 collateral attack in the trial court. Petitioner did not pursue such an avenue, and therefore has not adequately exhausted his state court procedures. Nevertheless, federal courts may deny an application on the merits, notwithstanding a petitioner's failure to exhaust state court remedies. 28 U.S.C. § 2254(b)(2). This allows courts to deny habeas petitions that contain unexhausted claims that are deemed patently frivolous. *See Edkin v. Travis*, 969 F.Supp. 139, 140 n. 1 (W.D.N.Y.1997). Accordingly, I will address the merits of petitioner's claims even though the state courts have not had an opportunity to address all of petitioner's claims.

## II. Standard of Review

■ Because the petition, which was filed on August 13, 1999, postdates the enactment of the Antiterrorism and Effec-

tive Death Penalty Act of 1996 ("AEDPA"), the AEDPA's revisions of 28 U.S.C. § 2254 govern this proceeding. *See Williams v. Taylor*, 529 U.S. 362, 402, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Lurie v. Wittner*, 228 F.3d 113, 120–21 (2d Cir.2000). The AEDPA provides the guidelines under which a federal habeas court may grant a writ based on a constitutional violation to a state prisoner whose claims have been adjudicated on the merits by a state court. *See* 28 U.S.C. § 2254; *see also Williams*, 529 U.S. at 402–410, 120 S.Ct. 1495. In reviewing a state prisoner's habeas corpus petition pursuant to 28 U.S.C. § 2254, a federal district court makes an independent determination as to whether the petitioner is in custody in violation of his rights under the Constitution or any laws and treaties of the United States. *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), *reh'g denied*, 501 U.S. 1277, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991). A federal court does not function as an appellate court to review matters within the jurisdiction of the state, or to review rulings and decisions of state trial and appellate courts when it reviews a state prisoner's habeas petition. Rather, the court only determines whether the proceedings in state court amount to a violation of federal constitutional rights. *Id.* Federal review of a state court conviction is limited to errors of federal constitutional magnitude which denied a criminal defendant the right to a fundamentally fair trial. *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973).

■ When a habeas claim has been adjudicated in state court, the habeas court may not grant relief unless the state court decision was:

contrary to, or involved an unreasonable application of, clearly established Feder-

al law, as determined by the Supreme Court of the United States; or ...

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2). "Clearly established" federal law "refers to the holdings, as opposed to the dicta of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decisions." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision is contrary to clearly established federal law if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result. *Id.* at 406, 120 S.Ct. 1495. A state court decision involves an "unreasonable application" of Supreme Court precedent if it unreasonably applies a governing legal rule to the particular facts of a case. *Id.* at 407, 120 S.Ct. 1495. This requires a habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable," not whether the application was erroneous or incorrect. *Id.* at 407–408, 120 S.Ct. 1495; *see also Clark v. Stinson*, 214 F.3d 315, 320–21 (2d Cir.2000). A state court determination of a factual issue is presumed to be correct. 28 U.S.C. § 2254(e)(1). The determination is unreasonable only where the petitioner meets his or her burden of rebutting the presumption of correctness by clear and convincing evidence. *Williams*, at 400–412, 120 S.Ct. 1495; *see also Francis S. v. Stone*, 221 F.3d 100, 114 (2d Cir.2000).[1]

## III. Habeas Corpus Claims of Petitioner

### A. Petitioner's Claim That His Fourth Amendment Rights Were Violated In Connection with the Execution of a Search Warrant At His Residence On 978 Clifford Avenue.

Hammock claims that the introduction of physical evidence recovered following the search of the premises at 978 Clifford Avenue violated his Fourth Amendment rights because the evidence should have been suppressed. Petitioner argues that the search warrant is invalid because the address was altered without the issuing judge's knowledge or consent. At the state court hearing on this issue, petitioner's wife, Danita Hammock, testified that she told the police officers attempting to execute the warrant that the address was incorrect. She informed the court that a detective changed the address in front of her without obtaining the judge's approval. Other witnesses testified that the address error was discovered before the officers arrived at the address, and the change was made in the Judge's presence and at his direction. The hearing court found that the search warrant was properly amended to authorize the search of 978 Clifford Avenue, and suppression was denied. Pe-

---

1. The court in Francis S. cautioned that:

    [T]his negative constraint on the authority of a federal habeas corpus court does not necessarily carry the affirmative implication that whenever a state court adjudication is based on "an unreasonable determination of the facts in light of the evidence" the writ should issue. For example, the Supreme Court has instructed that a state court jury's finding of guilt is not to be rejected as a deprivation of liberty without

    due process of law unless it can be said that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The conclusion of a federal habeas corpus court that the jury's verdict was not "reasonably supported" by the evidence would not meet Jackson's high standard.

    *Francis S.*, 221 F.3d at 115.

titioner raised this claim in his pro se brief on appeal. The state appellate court found that the hearing court's conclusion was supported in the record and would not disturb the ruling in light of the lower court's opportunity to evaluated the credibility of the witnesses. *People v. Hammock, supra.,* 255 A.D.2d 957, 681 N.Y.S.2d 184.

■■■ Prior to the retrial, the Honorable Stephen R. Sirkin, Acting New York State Supreme Court Justice, conducted a second suppression hearing regarding the execution of the search warrant and the allegations that an alteration had been made. The parties agreed that the warrant originally authorized the search of premises located at *972 Clifford Avenue* but that at some point the warrant had been changed to authorize a search of *978 Clifford Avenue.* Because the issuing judge who signed the search warrant was deceased, Justice Sirkin conducted an additional suppression hearing on the issue. Following the hearing, Justice Sirkin denied suppression, finding that the police officers, upon discovering the error in the address, returned to the issuing judge's residence and obtained authorization to correct the warrant. Therefore, the judge determined that the search warrant was properly amended prior to the search and that suppression should be denied.

■■■ This claim must be dismissed. Petitioner had a full opportunity to challenge the validity of the search and the procedures for obtaining the search warrant in the state courts. He had a suppression hearing prior to the first trial that was upheld on appeal. Prior to the second trial, at another suppression hearing, petitioner challenged the validity of the search warrant. The second determination that the search warrant was valid was upheld on the appeal after the second trial. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Stone v. Powell,* 428 U.S. 465, 481–482, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Therefore, petitioner is not entitled to federal habeas relief on this ground.

### B. Double Jeopardy Claim

Petitioner claims that the retrial should have been barred under the constitutional proscription against double jeopardy because the earlier conviction was reversed on appeal due to prosecutorial misconduct during the first trial. In reversing the earlier conviction, the Appellate Division found that "the prosecutor's conduct was programmed and deliberate, and in flagrant disobedience of the trial court's prior ruling. Despite strong proof of defendant's guilt, we reverse...." *People v. Hammock,* 182 A.D.2d 1114, 583 N.Y.S.2d 89 (4th Dept.1992) (citations omitted). Petitioner maintains that the prosecutor intentionally engaged in misconduct at the first trial to such a degree that subjecting petitioner to a second trial violates the prohibition against double jeopardy under the Fifth Amendment. These arguments were rejected by both the trial and the appellate courts. *Id.* Additionally, petitioner's state writ of habeas corpus based upon his double jeopardy claims was denied by the state courts. *People ex rel. Jesse Hammock v. Meloni,* 233 A.D.2d 929, 649 N.Y.S.2d 873 (4th Dept.1996).

■■■ The Double Jeopardy Clause of the Fifth Amendment, made applicable to the States through the Due Process Clause of the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), protects

a criminal defendant from repeated prosecutions for the same offense. *United States v. Dinitz*, 424 U.S. 600, 606, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). The Double Jeopardy Clause, however, does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding. *United States v. Jorn*, 400 U.S. 470, 483–484, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion); *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949). If the law were otherwise, "the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again." *Id.* In general, double jeopardy "does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." *Lockhart v. Nelson*, 488 U.S. 33, 38, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988) (citation omitted). There are, however, a few exceptions to this rule.

■ In *United States v. Dinitz*, the Supreme Court affirmed the general principle that a mistrial granted at a defendant's behest because of prosecutorial or judicial error will normally not foreclose a second trial. *Id.*, 424 U.S. at 607–09, 96 S.Ct. 1075. The Court determined, however, that where a defendant's motion for mistrial was intentionally provoked by the "bad faith conduct" of the judge or prosecutor, a retrial is proscribed by the Double Jeopardy Clause of the Fifth Amendment. *Id.* at 611, 96 S.Ct. 1075. Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such

error." *Id.* at 606, 96 S.Ct. 1075. Only where the governmental conduct in question was intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion. *See Oregon v. Kennedy*, 456 U.S. 667, 679, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) (where the Supreme Court explained that the double jeopardy bar can be interposed by a criminal defendant who has successfully moved for a mistrial only where "the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.").

■ The Second Circuit discussed the application of *Kennedy*, as follows:

> Since *Kennedy* bars a retrial on jeopardy grounds where the prosecutor engages in misconduct for the purpose of goading the defendant into making a successful mistrial motion that denies the defendant the opportunity to win an acquittal, the Supreme Court might think that the Double Jeopardy Clause protects a defendant from retrial in some other circumstances where prosecutorial misconduct is undertaken with the intention of denying the defendant an opportunity to win an acquittal.

*United States v. Wallach (Wallach II)*, 979 F.2d 912, 915–16 (2d Cir.1992), *cert. denied*, 508 U.S. 939, 113 S.Ct. 2414, 124 L.Ed.2d 637 (1993). The prosecutorial misconduct-based double jeopardy doctrine has been applied to cases in which the motion for mistrial was denied but the action was later reversed on appeal. *See Petrucelli v. Coombe*, 735 F.2d 684 (2d. Cir.1984); *United States v. Roberts*, 640 F.2d 225 (9th Cir.), *cert. denied*, 452 U.S. 942, 101 S.Ct. 3088, 69 L.Ed.2d 957 (1981); *United States v. Rios*, 637 F.2d 728, 729 (10th Cir.1980), *cert. denied*, 452 U.S. 918, 101 S.Ct. 3054, 69 L.Ed.2d 422 (1981);

*United States v. Opager,* 616 F.2d 231, 235–36 (5th Cir.1980). Nevertheless, "[o]nly where the prosecutor's misconduct was deliberate and the anticipation of acquittal was likely, all as found in the objective facts, does double jeopardy bar retrial." *United States. v. Pavloyianis,* 996 F.2d 1467, 1475 (2d Cir.1993).

Here petitioner's motions for mistrial were denied, but the conviction was later reversed on appeal due to prosecutorial misconduct. Petitioner was granted a pretrial hearing to determine whether retrial was barred in light of the prosecutorial misconduct during the first trial. The trial court had the benefit of examining the witnesses involved and made a factual determination concerning the intentions of the prosecutor with respect to the misconduct and the motions for mistrial. The state trial court determined that the prosecutor's misconduct was not intentionally designed to cause the petitioner to move for a mistrial. That decision was affirmed by the Appellate Division.

■ In interpreting § 2254(e)(1)'s precursor, the Supreme Court defined the phrase "factual issue" to include "basic, primary, or historical facts: facts in the sense of a recital of external events and the credibility of their narrators." *Thompson v. Keohane,* 516 U.S. 99, 109–10, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) (internal quotation omitted). AEDPA strengthened the "presumption of correctness" to be accorded state court findings of fact, by adding the following underlined language:

> [i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebut-

ting the presumption of correctness by clear and convincing evidence.

28 U.S.C § 2254(e)(1) (as renumbered by AEDPA). This amendment "clearly raised the bar for habeas petitioners, placing on them the burden to show by clear and convincing evidence that the state court decision was defective in some way." *Smith v. Sullivan,* 1 F.Supp.2d 206, 210 (W.D.N.Y.1998). The touchstone for a reasonable determination under § 2254(e)(1) is " 'whether the determination is at least minimally consistent with the facts and circumstances of the case.' " *Sellan v. Kuhlman,* 63 F.Supp.2d 262, 267 (E.D.N.Y.1999) (quoting *Hennon v. Cooper,* 109 F.3d 330, 335 (7th Cir.), cert. denied, 522 U.S. 819, 118 S.Ct. 72, 139 L.Ed.2d 32 (1997)). The determination, based on the evaluation of the credibility of the witnesses and of the evidence presented at the hearing, that the prosecutor did not intend to provoke a motion for a mistrial when he engaged in the misconduct is certainly consistent with the facts of the case.

■ Moreover, the determination that retrial was not barred by the Fifth Amendment Double Jeopardy Clause in this action was neither contrary to nor an unreasonable application of clearly established federal law. Not every instance of prosecutorial misconduct is sufficient to bar a retrial.

A second prosecution is barred only in those cases where the prosecutorial misconduct was undertaken with the specific intent "to subvert the protections afforded by the Double Jeopardy Clause." *Kennedy* at 676, 102 S.Ct. 2083; *United States v. Huang,* 960 F.2d 1128, 1133 (2d Cir.1992); *Wallach II,* 979 F.2d at 915–916. Here, the findings of the state court are consistent with federal law. Therefore, petition-

er is not entitled to habeas corpus relief on these grounds.

## C. Ineffective Assistance of Counsel

Petitioner claims that he was denied effective assistance of trial counsel because defense counsel implied to the jury that Hammock was guilty of killing the two victims and because counsel failed to present exculpatory evidence at trial. During *voir dire*, defense counsel stated "Jesse Hammock is black and he's accused of killing two people. Those two people happen to be white. Does that bother you in any way? Would that in any way cause you to pre-judge him, knowing that the two people that he killed happened to be white...." (TT[2] 137–38). The judge intervened with "that he's accused of killing...." (TT 138).

Petitioner's claim that counsel failed to introduce exculpatory evidence is based on his claim that he provided counsel with letters from prosecution witness Vernessa Maddox. He contends that the letters would have established how he came into possession of the evidence found in his apartment. (Answer, Appendix D at 15). This evidence was never offered or produced at trial. The Appellate Division rejected petitioner's ineffective assistance of counsel claims and stated that to the extent his claims arise from matters outside the record, he should develop the facts in a post-judgment motion pursuant to New York CPL § 440. *People v. Hammock*, 255 A.D.2d at 958, 681 N.Y.S.2d 184.

To establish ineffective assistance of counsel, a defendant must prove: (1) that counsel's performance fell below an objective standard of reasonableness, *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); and (2) that the deficient performance prejudiced the defense, which requires a showing that there is a reasonable probability that, but for counsel's unprofessional errors, the re-

sult of the proceeding would have been different, *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *and see Bloomer v. United States*, 162 F.3d 187, 192 (2d Cir.1998); *Tyson v. Keane*, 159 F.3d 732, 736 (2d Cir.1998), *cert. denied*, 526 U.S. 1027, 119 S.Ct. 1270, 143 L.Ed.2d 365 (1999).

In determining whether counsel's performance was deficient, petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052; *Bloomer*, 162 F.3d at 192. This "includes a consideration of all the circumstances surrounding the attorney's actions." *Bloomer*, 162 F.3d at 192. Finally, in evaluating counsel's conduct, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052; *Bloomer*, 162 F.3d at 193.

Moreover, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment in a criminal proceeding, under the *Strickland* standard, if the error had no effect on the judgment. To merit federal habeas relief on ineffective assistance of counsel grounds, the petitioner must show that counsel's deficient performance prejudiced his defense; that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

■ A review of the record shows that petitioner's attorney was not deficient in the course of his representation. Trial Counsel's statement during *voir dire* was in the midst of a series of questions exploring the effect of racial differences on the jurors' ability to fairly judge the evidence. He began the question by stating that Hammock was "accused of killing two peo-

**2.** "TT ---" denotes the transcript page from the second state court trial.

ple" (TT 137), and then continued to focus on the racial issue. His query: "Would that in any way cause you to pre-judge him, knowing that the two people that he killed happened to be white...." was immediately clarified by the trial court. (TT 137–38). This single clearly-inadvertent comment, when viewed in the context of the rest of the *voir dire* and the entire trial, fails to provide a reasonable probability that the result of the proceeding would have been different.

■ With respect to petitioner's claim that counsel failed to introduce the exculpatory letters, as noted above, petitioner did not pursue this claim in the state courts. Thus, not only has the issue not been exhausted, the evidence concerning the claims are not in the record. What impact, if any, such letters would have had on the trial is impossible to determine. Clearly, petitioner has not demonstrated a reasonable possibility that the production or introduction of such letters would have altered the result. His assertion that the letters would have exonerated him stands alone, unsupported by the record before the court.

Accordingly, I find that petitioner has failed to demonstrate that his counsel's performance fell below the requirements for adequate counsel, and he is not entitled to habeas relief on this ground.

### CONCLUSION

For the reasons stated above, Jesse Hammock's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.

Further, because the issues raised in the petition are not the type that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, this Court concludes that the petition presents no federal question of substance worthy of attention from the Court of Appeals and, therefore, pursuant to 28 U.S.C. § 2253 and Fed.R.App.P. 22(b), this Court denies a certificate of appealability.

IT IS SO ORDERED.