**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Eddie Lee DAVIS and Pearlie Mae Davis, Defendants-Appellants.**

**Nos. 76–2127, 76–2128.**

United States Court of Appeals, Tenth Circuit.

Argued Jan. 23, 1978.

Decided June 15, 1978.

Rehearing Denied July 18, 1978.

Thomas DeCoursey, Kansas City, Kan., for defendants-appellants.

Douglas B. Comer, Asst. U. S. Atty., Topeka, Kan. (E. Edward Johnson, U. S. Atty., Topeka, Kan., and Richard L. Hathaway, Asst. U. S. Atty., Kansas City, Kan., on brief), for plaintiff-appellee.

Before McWILLIAMS, BREITENSTEIN and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Eddie Lee Davis and his wife Pearlie Mae Davis seek reversal of their convictions for introducing contraband and conspiring to introduce contraband into the United States Penitentiary at Leavenworth, Kansas, in violation of 18 U.S.C. §§ 371, 1791, 1792. They raise three issues on appeal. The first

claim is that the government, in a prior trial of Mr. Davis which ended in a mistrial and which involved the same contraband, withheld from him information required to be disclosed by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). He claims that if the information had been disclosed he would have been acquitted and that his second trial therefore constituted either double jeopardy or a denial of due process. The second claim is that the conspiracy merged in the substantive offense and could not be charged as a separate offense. The third claim is that testimony about a codefendant's out of court statement, properly admitted at the trial under the coconspirator exception, became inadmissible hearsay as to defendants when the codefendant was later acquitted by the jury. The trial court properly rejected each of these contentions.

The salient facts are not disputed. After two "balloons" containing $2,000 were discovered by prison officials in Mr. Davis' possession he was indicted and tried for introducing contraband into the prison. The government's theory in the first trial was that Mr. Davis introduced the contraband into the prison at the time of his original entry on January 2, 1975. At that trial an FBI agent testified Mr. Davis had admitted bringing an unauthorized $2,000 into the prison in January 1975. Mr. Davis denied the alleged admission and testified that the money came from another inmate. The jury was unable to reach a verdict and the government subsequently dismissed the indictment.

One month after the mistrial the present charges were brought. Mr. and Mrs. Davis and one Erma Beal were indicted for conspiracy to introduce contraband, and Mr. and Mrs. Davis were indicted for actually introducing the contraband into the prison. Evidence produced at this trial established the following facts.

During the week of February 9–13, 1976, while Mr. Davis was an inmate at Leavenworth, he was visited several times by Mrs. Davis and his sisters, Erma Beal and Esma Griffin. Willie Wyche, a corrections officer

at Leavenworth, testified he overheard the following statements made by Erma Beal in conversation with Mrs. Davis in the local American Legion Hall on February 13: "'We gave him $2,000. Why do he want more?' or 'Why he need more?'" Record, vol. 1, at 24. Wyche further testified he knew the women were related to an inmate named Davis. The following morning Wyche reported the incident to his supervisor, William Andrus, who wrote a note to Mr. Davis' investigating officer, Lt. James Studdard. Andrus' note read:

> I got word this morning at 6:30 that the wife and sister of Davis, 88505, arrived in Leavenworth yesterday with $2,000 for him. They did not know what it was needed for.

*Id.* at 55. This note was placed in Mr. Davis' prison file.

On February 13, 1976, Mrs. Davis and Esma Griffin signed in to visit Mr. Davis at the penitentiary. Based upon the recommendation of the visiting room guard, prison officials conducted a search of Mr. Davis and discovered two rolls of $1,000 wrapped in tape.

■ Mr. Davis maintains that the note written by Andrus to Lt. Studdard was withheld from the defense by the prosecution during the first trial, thus constituting a violation of due process under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). He claims he should be acquitted of the charges in the second indictment or alternatively granted a new trial on the first indictment. In his first trial, Mr. Davis was not convicted; rather, a mistrial was declared after the jury failed to reach a verdict. The prosecution is free in such a situation to retry the defendant a second time either on the original indictment or on a new indictment. *See Burris v. Ryan*, 397 F.2d 553, 555–56 (7th Cir. 1968); *Howard v. United States*, 372 F.2d 294, 300 (9th Cir.), *cert. denied*, 388 U.S. 915, 87 S.Ct. 2129, 18 L.Ed.2d 1356 (1967).

■ The court in *Brady* stated that "the suppression by the prosecution of evidence favorable to an accused upon request

violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196. However, a violation of due process under *Brady* does not entitle a defendant to an acquittal, but only to a new trial in which the convicted defendant has access to the wrongfully withheld evidence. During the second trial all evidence material to the defense was revealed by the prosecution, including Andrus' note. Assuming arguendo that nondisclosure at the first trial of the note written by Andrus was indeed a violation of the principles laid down in *Brady*, the most an invocation of *Brady* could accomplish would be the ordering of a new trial in which the withheld information is fully disclosed. The second trial of Mr. Davis, which is the case on appeal before us, in effect afforded him the new trial remedy prescribed by *Brady*. In this fact situation, defendants' claim that the second indictment and trial subject Mr. Davis to double jeopardy is simply contrary to long established precedent. *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824); *Golubin v. United States*, 393 F.2d 590 (10th Cir. 1968), *cert. denied*, 393 U.S. 831, 89 S.Ct. 100, 21 L.Ed.2d 102 (1968).

■ Defendants next claim that the operation of Wharton's Rule merges the conspiracy in the substantive offense of introducing contraband and argue that they may be sentenced only for the substantive offense. Traditionally the law has treated conspiracy and the completed substantive offense as separate crimes. Although Wharton's Rule establishes an exception to this practice in certain cases, the attempted use of the Wharton's Rule exception here is misplaced. As the Supreme Court stated in *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975): "The classic Wharton's Rule offenses—adultery, incest, bigamy, duelling—are crimes that are characterized by the general congruence of the agreement [conspiracy] and the completed substantive offense. . . . Wharton's Rule applies only to offenses that *require* concerted criminal activity, a plurality of criminal agents." *Id.* at 782,

785, 95 S.Ct. at 1292 (emphasis in original). In an earlier decision dealing with the application of Wharton's Rule, the Court explained that "where it is impossible under any circumstances to commit the substantive offense without co-operative action, the preliminary agreement between the same parties to commit the offense is not an indictable conspiracy." *Gebardi v. United States*, 287 U.S. 112, 122, 53 S.Ct. 35, 37, 77 L.Ed. 206 (1932). In the instant case, introduction of contraband into Leavenworth penitentiary clearly did not "*require* concerted criminal activity," nor would it have been "impossible under any circumstances to commit the substantive offense without co-operative action."

Defendants maintain that *Iannelli* requires application of the Wharton Rule whenever there is no clear legislative purpose to establish conspiracy and a substantive offense as separate crimes. The government is correct in its analysis, however, that *Iannelli* does not create a requirement that in each case the statute must be examined to determine if a separate prosecution for conspiracy is also expressly authorized. In any event, 18 U.S.C. § 1791 and regulations promulgated thereunder by the Attorney General, which have the force of law, and 18 U.S.C. § 371 establish a legislative intent to allow independent actions for conspiracy to introduce and for introducing contraband into a United States penitentiary. Under the facts of this case, the government acted properly in charging both conspiracy and the substantive offense.

Defendants finally contend that, although statements of one coconspirator are initially admissible against another in a conspiracy case, those statements are reduced to inadmissible hearsay by the subsequent acquittal of the coconspirator declarant. Thus, Wyche's testimony regarding Erma Beal's statement in the American Legion Hall is inadmissible hearsay against defendants since Mrs. Beal was later acquitted of the conspiracy charge. They argue in effect that her acquittal rendered the statement retroactively inadmissible.

Extrajudicial declarations of alleged coconspirators are admissible under the conspiracy exception to the hearsay rule only if there is both proof of the declarant's participation in the conspiracy by substantial independent evidence and no Sixth Amendment confrontation clause violation. *See Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *United States v. King*, 552 F.2d 833, 845–47 (9th Cir. 1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977). At the very minimum a prima facie case of the declarant's involvement in the conspiracy is required to justify admissibility. *United States v. Nixon*, 418 U.S. 683, 701 & n. 14, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). Where the evidence is insufficient for submission to the jury and the court acquits an alleged coconspirator, prior admitted out-of-court statements of the acquitted defendant become inadmissible and a new trial is required. *See United States v. Ratcliffe*, 550 F.2d 431 (9th Cir. 1976).

In this case, however, Mrs. Beal was acquitted by the jury, not the court. There was sufficient evidence to submit the charge against her to the jury. Defendants do not challenge this. Defendants also raise no Sixth Amendment challenge. Thus, the test for admissibility had been met. Admissibility does not depend on whether the declarant is ultimately convicted. *See, e. g., United States v. Blackshire*, 538 F.2d 569, 571 (4th Cir.), *cert. denied*, 429 U.S. 840, 97 S.Ct. 113, 50 L.Ed.2d 108 (1976). Defendants did not request the court either at the introduction of the statement or at the end of the case to caution the jury that if they found a defendant not guilty of conspiracy, they were not to consider that defendant's acts or declarations as evidence against the others. Had such an instruction been requested and denied, there may have been reversible error. *See United States v. King*, 552 F.2d at 846–47. We find no error.

AFFIRMED.