**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Don H. PACE, Defendant–Appellant.**

**No. 98–10521.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 1999

Filed Feb. 7, 2000

Bruce R. Heurlin, Karp, Heurlin & Weiss, Tucson, Arizona, for the defendant-appellant.

Christina M. Cabanillas, Assistant United States Attorney, Tucson, Arizona, for the plaintiff-appellee.

Ross S. Myers (briefed), Kansas City, Missouri, for amicus National Association of Insurance Commissioners.

Before: BROWNING, RYMER, and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

The issue before us involves appellate jurisdiction over an interlocutory appeal in a criminal case. We dismiss the appeal for lack of jurisdiction.

### Facts

The case arises out of the bonding business in the construction industry. In private construction, obligations to laborers and material men are secured by mechanics lien laws, giving them liens against the real estate they improved. But it is not practical to give people liens against military bases and highways, so generally in government construction, the mechanics lien laws do not apply. Instead, the Miller Act requires contractors on federal projects to purchase bonds securing the laborers and material men. States generally

have "little Miller Acts" doing the same thing for state and local construction.

Don H. Pace, the appellant, was in the business of selling these bonds. He has been indicted but not convicted for alleged personal dishonesty in this business. The facts we set out are based on the charges in the indictment, and have not been proved. Pace was the president and chief executive officer of Pace American Group, a corporation that owned American Bonding Company. Pace developed a business relationship with an agent who placed the kind of bonds Pace sold, Ralph Eidem, Jr. Eidem owned and operated Commercial Surety Bond & Insurance Agency. They made an arrangement for Eidem's agency to overcharge Pace's company, and then refund half the overcharge to Pace personally. Eidem kept the other half of the 5% overcharge. This might have been innocent, had Pace's company been paying a bonus to Eidem's agency for placing so much business, and Eidem's agency refunding part of the bonus to Pace's company because it turned out to be so much money. But Pace's company knew nothing about it, and the 2–1/2% Eidem paid back went into Pace's personal pocket, not to his company. That 2–1/2% was around a half million dollars. It was disguised by false 1099's issued at Eidem's direction. Again, we are telling the government's story, which has not been proved and which the jury may ultimately reject.

Eidem and Pace were indicted for conspiracy to commit mail fraud, wire fraud, money laundering, and false tax returns. The case comes before us on Pace's appeal from denial of his motion to dismiss the indictment. The district court denied the motion, but stayed the case pending appeal, and certified the case for interlocutory appeal.

*Analysis*

Pace's theory was that California state law allowed the commission arrangement he had with Eidem, federal law leaves regulation of insurance to the states, and federal law precludes prosecution because prosecution would impair operation of California insurance law. We review *de novo*.[1]

1. 1292(b) Certification.

     Under 28 U.S.C. § 1291, the federal court of appeals has jurisdiction over "final decisions of the district courts of the United States."[2] "A district court's decision is appealable under § 1291 only when the decision 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' "[3] In a criminal case, litigation is not ended, and therefore not subject to "appellate review until conviction and imposition of sentence."[4] Thus on its face section 1291 does not give us jurisdiction over this appeal, because Pace has not yet been tried and convicted.

     After it denied Pace's motion to dismiss and he filed his interlocutory appeal, the district court granted Pace's motion to stay the trial until we ruled on Pace's appeal. The district court was "of the opinion that its Order ... denying Defendants' 'Joint Motion to Dismiss ...' involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, and thus, is appropriate pursuant to 28 U.S.C. § 1292(b)."

     Pace argues that we have jurisdiction under section 1292(b) because of the

---

1. *See, e.g., United States v. Fitzgerald,* 147 F.3d 1101, 1102 (9th Cir.1998).

2. 28 U.S.C. § 1291 (1994).

3. *Confederated Salish v. Simonich,* 29 F.3d 1398, 1401 (9th Cir.1994) (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S.

271, 275, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988)).

4. *Flanagan v. United States,* 465 U.S. 259, 263, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984); *see also United States v. Carnes,* 618 F.2d 68, 69 (9th Cir.1980).

district court certification. The argument is mistaken. Section 1292(b) does indeed provide for interlocutory appeals in certain circumstances upon a certification by the district court such as the one made here. But the statute is limited by the words "in a civil action."[5] This is not a civil action. It is a criminal prosecution. Because of the statutory qualification, section 1292(b) certifications cannot confer interlocutory appellate jurisdiction in criminal prosecutions. The section 1292(b) certification therefore cannot confer jurisdiction upon us.[6] Pace argues that efficiency and economy would be promoted by interlocutory appeal, but that is not an argument upon which we may act in light of the clear statutory limitation.

2. Collateral order.

 ▮] Pace argues we have jurisdiction over his appeal under the collateral order doctrine. Under that collateral order doctrine, a small class of decisions are appealable under § 1291 even though they do not terminate the underlying action. "[W]e have jurisdiction to hear an appeal of a district court's interlocutory order if the order (1) 'conclusively determines the disputed question'; (2) 'resolves an important issue completely separate from the merits of the action'; and (3) is 'effectively unreviewable on appeal from a final judgment.' "[7]

We need not consider the first two elements because Pace's theory for dismissal is reviewable on appeal from a final judgment, if he is convicted. He would simply argue then, as he does now, that the McCarran–Ferguson Act[8] protects him from the federal conviction.

▮] Pace argues that that would not suffice, because his right under the McCarran–Ferguson Act is not merely to avoid a conviction, but to avoid prosecution and trial. If Pace is entitled not to be tried, then, as he says, vacating a conviction after a trial would not vindicate his right. He draws an analogy to double jeopardy cases, where interlocutory review must be provided[9] where otherwise a person might be "twice put in jeopardy."[10] The critical word in that constitutional language, for purposes of deciding whether interlocutory appeal is available, is "jeopardy"; the Constitution says "twice put in jeopardy," not "twice convicted." By analogy, Pace argues, the McCarran–Ferguson Act gives people in the insurance business an immunity from federal prosecution.

We reject this argument. The McCarran–Ferguson Act does not provide an immunity from prosecution, regardless of whether in some circumstances it may provide a bar to conviction.

The statutory language cannot carry Pace's load. The McCarran–Ferguson Act says "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any state for the purpose of regulating the business of insurance . . . ."[11] Pace's state law argument is that California formerly prohibited insurance sellers from splitting commissions, but the prohibition was repealed.[12] His theory is that because California allows splitting of agents' commissions, construing the mail fraud and other federal statutes to prohibit what he did would impair operation of the state regulatory scheme. The government argues that the McCarran–Ferguson Act is expressly limited to

---

**5.** *See* 28 U.S.C. § 1292(b).

**6.** *See United States v. Russell,* 804 F.2d 571, 573 n. 3 (9th Cir.1986).

**7.** *Confederated Salish,* 29 F.3d at 1402 (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)).

**8.** 15 U.S.C. § 1012.

**9.** *See Abney v. United States,* 431 U.S. 651, 661, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

**10.** U.S. Const. amend. V.

**11.** 15 U.S.C. § 1012(b).

**12.** *See* Cal. Ins.Code § 755, *repealed by* Proposition 103, November 8, 1988.

state laws regulating the "business of insurance," and the secrecy and diversion of the money from Pace's company to Pace's pocket made this business of Pace personally, not his company's "business of insurance." The National Association of Insurance Commissioners, as *amicus curiae,* argue that the kind of secret kickback Pace is charged with taking is not the kind of commission splitting California decided to allow, so prosecution is not barred by the McCarran–Ferguson Act because it does not frustrate any state regulatory policy. We do not reach these arguments, because regardless of whether they are correct, the McCarran–Ferguson Act does not provide an immunity from prosecution. Review of the issues raised by these arguments is available after a final judgment.

There is no language in the statute providing individuals with an immunity from prosecution. The statutory command is that no federal statute "shall be construed"[13] in a particular way, not that no one shall be prosecuted. Appellate courts construe statutes, so the command is addressed to us, but Congress has commanded us to construe them in federal criminal cases, with certain exceptions not applicable here, only after final judgment. We simply lack authority to construe the McCarran–Ferguson Act as applied to the substantive conduct at issue in this case until there is a final judgment. The statutory command tells us how to construe the statute, not when to construe it.

The only other circuit to have considered this issue is the Eleventh. It reached the same conclusion as we do, that the McCarran–Ferguson Act did not provide immunity from prosecution, no right "not to be tried," but rather acted "as a defense to liability" and was therefore effectively reviewable on appeal from final judgment.[14] There is no good reason to set up an intercircuit split on the issue.

**13.** 15 U.S.C. § 1012(b).

### Conclusion

No interlocutory review is available, despite the 1292(b) certification, and despite the collateral order doctrine and the McCarran–Ferguson Act. This appeal is therefore DISMISSED for lack of jurisdiction.

**14.** *Jordan v. AVCO Fin. Servs.,* 117 F.3d 1254, 1258 (11th Cir.1997).