**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**David Gene LEWIS, Defendant–
Appellant.**

**No. 03–10181.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 13, 2004.

Filed May 25, 2004.

Donald P. Riordan, Riordan & Horgan, San Francisco, CA, for the appellant.

Erika R. Frick, Assistant United States Attorney, San Francisco, CA, for the appellee.

Before WALLACE, McKEOWN, and CALLAHAN, Circuit Judges.

CALLAHAN, Circuit Judge.

David Gene Lewis, a former California correctional officer, appeals the district court's denial of his motion to dismiss the indictment. Lewis raises two issues. First, can Lewis seek interlocutory review of the district court's denial of his "fair warning" defense? Second, did the prosecution's alleged *Brady*[1] violations raise double jeopardy concerns? We answer both questions in the negative.

---

1. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (holding that the prosecution's suppression of evidence materi- al to guilt or punishment violates due process, regardless of the prosecution's good or bad faith).

## Background

This matter springs from an incident on June 20, 1994, when Lewis, then a correctional officer at Pelican Bay State Prison, shot and seriously wounded an inmate, Harry Long, during a prison-yard disturbance. Five years after the shooting, a federal grand jury charged Lewis with violating 18 U.S.C. § 242, Deprivation of Rights Under Color of Law, and 18 U.S.C. § 924(c), Use of a Firearm in Relation to a Crime of Violence. One year after the indictment, the Government tried Lewis, and a jury convicted him of both counts.

In January 2002, in an unpublished disposition, we reversed Lewis's convictions and remanded for a new trial. In reversing, we held that the district court had committed error by excluding from trial a Shooting Review Board Report. At a status hearing after remand, the Government revealed that it had just learned about potentially exculpatory material that it had not previously shown to Lewis. The two allegedly withheld pieces of information were (1) statements by Long that his fellow combatant in the prison yard had a weapon and (2) a statement by a fellow prison guard that "it would be very difficult to see what was really happening" from the tower where Lewis shot Long.

Lewis moved to dismiss the prosecution against him on fair warning and double jeopardy grounds. The district court denied the motion, and Lewis appealed. The district court subsequently vacated the trial date pending appeal.

## Discussion

### A. Lewis's Fair Warning Claim

The fair warning requirement ensures that "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954). Lewis contends that this requirement shields him from criminal prosecution for the shooting at Pelican Bay State Prison. While the fair warning requirement may, or may not, shield Lewis from ultimate criminal liability—an issue on which we take no position—this issue is not subject to interlocutory review.

 Under 28 U.S.C. § 1291, criminal cases generally are not subject to appellate review "until after conviction and sentence." *See Flanagan v. United States*, 465 U.S. 259, 263, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984); *United States v. Pace*, 201 F.3d 1116, 1118 (9th Cir.2000). Courts, however, have carved out a small class of cases from this jurisdictional bar under the "collateral order doctrine." *Pace*, 201 F.3d at 1119. To fall within this exception, the appealed order must "1) 'conclusively determine the disputed question,' 2) 'resolve an important issue completely separate from the merits of the action,' and 3)'be effectively unreviewable on appeal from a final judgment.'" *United States v. Bird*, 342 F.3d 1045, 1046 (9th Cir.2003) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)).

 Nevertheless, the Supreme Court has warned against broadening the scope of interlocutory review in criminal cases. Piecemeal appeals encourage delay, which "is fatal to the vindication of the criminal law." *United States v. MacDonald*, 435 U.S. 850, 853–54, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978) (citing *Cobbledick v. United States*, 309 U.S. 323, 325, 60 S.Ct. 540, 84 L.Ed. 783 (1940)). Society has an "interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." *Id.* at 862, 98 S.Ct. 1547 (quoting *Barker v. Wingo*, 407 U.S. 514, 519, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). "[D]elay may prejudice the prosecution's ability to prove its

case, increase the cost to society of maintaining those defendants subject to pretrial detention, and prolong the period during which defendants released on bail may commit other crimes." *Id.* Accordingly, we interpret the collateral order doctrine with the "utmost strictness" in criminal cases. *California v. Mesa,* 813 F.2d 960, 962 (9th Cir.1987) (citing *Flanagan,* 465 U.S. at 265, 104 S.Ct. 1051).

■ A major characteristic of an appealable claim under the collateral order doctrine is that "unless it can be reviewed before [the proceedings terminate], it can never be reviewed at all." *Mitchell v. Forsyth,* 472 U.S. 511, 525, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (quoting *Stack v. Boyle,* 342 U.S. 1, 12, 72 S.Ct. 1, 96 L.Ed. 3 (1951)). Were this a civil case, we would have interlocutory jurisdiction over a court's pretrial denial of a qualified immunity claim. *See id.; Cunningham v. City of Wenatchee,* 345 F.3d 802, 808–09 (9th Cir.2003). This is true, in part, because an official's qualified immunity is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell,* 472 U.S. at 526, 105 S.Ct. 2806 (emphasis in original).

■ Lewis argues that the fair warning requirement similarly shields him from criminal prosecution, rather than merely providing a defense to conviction. In doing so, Lewis points to the Supreme Court's statement that fair warning and qualified immunity serve similar objectives: "to give officials (and, ultimately, governments) the same protection from civil liability and its consequences that individuals have traditionally possessed in the face of vague criminal statutes." *United States v. Lanier,* 520 U.S. 259, 270–71, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). Lewis, however, reads *Lanier* too broadly.

While noting the two doctrines' similar purpose, the Court in *Lanier* did not hold that the fair warning requirement insulates a criminal defendant from standing trial, as qualified immunity does for a civil defendant. Rather, the Court held that qualified immunity provides officials "the same protection from civil *liability* that individuals have traditionally possessed in the face of vague criminal statutes."[2] *Id.* at 270–71, 117 S.Ct. 1219 (emphasis added). Without express authority, we will not expand the scope of immunity to criminal *prosecution,* "regardless of whether in some circumstance [that immunity] may provide a bar to conviction." *Pace,* 201 F.3d at 1119–20. Lewis cites no case, nor can we find any, that has extended fair warning to include a protection from standing trial.[3]

**2.** *Lanier* involved a defendant, state judge David Lanier, who was convicted under 18 U.S.C. § 242 for criminally violating the constitutional rights of five women by sexually assaulting them while he was in state office. The Supreme Court overturned the Sixth Circuit's conclusion that criminal liability could be imposed under § 242 only if the Supreme Court had previously identified the constitutional right at issue in a case with fundamentally similar facts. *Lanier,* 520 U.S. at 263, 117 S.Ct. 1219. In reversing, the Supreme Court held that due process under § 242 does not demand more than the "clearly established" law requires for a public officer to be held civilly liable for a constitutional violation

under § 1983 or *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *Lanier,* 520 U.S. at 270, 117 S.Ct. 1219.

**3.** Notably, qualified immunity and fair warning derive from two entirely separate sources. The fair warning requirement, which springs from the Due Process Clause, protects a defendant from criminal liability. *See Harriss,* 347 U.S. at 617, 74 S.Ct. 808. Qualified immunity, on the other hand, is a common-law *"immunity from suit* rather than a mere defense to liability," *Mitchell,* 472 U.S. at 526, 105 S.Ct. 2806, which public officials typically invoke as a defense to 42 U.S.C. § 1983

Not only do we lack authority to expand the fair warning requirement's scope, the rules of criminal procedure give us good reason not to do so. A district court can only grant a dismissal in the criminal context if the issue is " 'entirely segregable' from the evidence to be presented at trial." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.1986) (citations omitted). Otherwise, "the motion falls within the province of the ultimate finder of fact and must be deferred [to the jury]." *Id.*

Here, Lewis's fair warning claim involves questions inextricably intertwined with the question of his alleged guilt. The government accuses Lewis of willfully depriving Long of his Eighth Amendment right against cruel and unusual punishment. Specifically, the government charged Lewis, in part, with violating 18 U.S.C. § 242. That code section makes it a criminal act to act "(1) 'willfully' and (2) under color of [state] law (3) to deprive a person of rights protected by the Constitution or laws of the United States." *Lanier*, 520 U.S. at 264, 117 S.Ct. 1219 (citing *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945)). Lewis counters that § 242 failed to provide fair warning that his actions violated Long's Eighth Amendment rights. Lewis bases this defense on the same evidence that the Government will introduce at trial to support the underlying charge. Consequently, Lewis's defense is not "entirely segregable" from the evidence the Government will present at trial.

We recognize that, in certain situations, courts may dispose of factual questions underlying immunity defenses before subjecting the defendant to a criminal trial. For instance, courts may decide the facts supporting a double jeopardy claim or the scope of an immunity agreement before allowing the jury to deliberate on guilt. *See, e.g., United States v. Anderson*, 79 F.3d 1522, 1525–31 (9th Cir.1996) (reviewing a district court's denial of a pre-trial motion for a *Kastigar*[4] hearing); *United States v. Mendoza*, 78 F.3d 460, 464–65 (9th Cir.1996) (reviewing whether the government breached an immunity agreement); *United States v. Gutierrez–Zamarano*, 23 F.3d 235, 237 (9th Cir.1994) (reviewing a defendant's double jeopardy claim). None of these claims, however, dealt with the underlying merits. Here, Lewis's claim goes directly to the underlying merits; the evidence he seeks to introduce regarding his fair warning defense goes to the heart of his criminal liability.

The fair warning doctrine may ultimately protect Lewis from criminal liability. That, however, is an issue we can review after judgment, if necessary. We therefore dismiss the interlocutory appeal of Lewis's fair warning claim.

### B. Lewis's Double Jeopardy Claim

■ Lewis contends that the prosecution's alleged *Brady* violations at his initial trial implicate the Double Jeopardy Clause. Specifically, Lewis claims that during the original trial the prosecution withheld certain exculpatory statements by Long and a fellow prison guard. He alleges that the Government committed these violations to avoid acquittal.

claims. *See, e.g., Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (applying qualified immunity to a police officer after noting that Congress never meant to abolish common-law immunities).

**4.** *Kastigar v. United States*, 406 U.S. 441, 460–62, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972)

(holding that a defendant "need only show that he testified under a grant of immunity in order to shift to the government the heavy burden of proving that all evidence it proposes to use was derived from legitimate, independent sources").

■■ Courts typically review *Brady* violations post-trial. *See United States v. Smith*, 282 F.3d 758, 770 (9th Cir.2002). Lewis seeks to get around this bar and justify interlocutory review by creatively arguing that the Government's alleged *Brady* violations constitute a double jeopardy bar. A district court's pre-trial order rejecting a claim of double jeopardy constitutes a "final decision" and thus satisfies the collateral order doctrine. *Abney v. United States*, 431 U.S. 651, 662, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). Nevertheless, any double jeopardy claim must be "colorable" for this court to possess jurisdiction. *See Richardson v. United States*, 468 U.S. 317, 322, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984); *United States v. Price*, 314 F.3d 417, 420 (9th Cir.2002). Lewis's claim is colorable only because it raises two issues of first impression in this circuit: (1) whether a defendant can invoke the Double Jeopardy Clause due to a prosecutor's alleged *Brady* violation and (2) whether the Double Jeopardy Clause applies to a situation where the defendant overturns a conviction on appeal. *See Price*, 314 F.3d at 420. We therefore review *de novo* the district court's denial of Lewis's double jeopardy claim. *See id.*

■ We have never addressed whether a defendant can invoke the Double Jeopardy Clause due to a prosecutor's alleged *Brady* violation. Other circuits, however, have explicitly held that defendants may not invoke the Double Jeopardy Clause in such circumstances. We agree with the conclusions of those circuits.

As the Third Circuit noted, *Brady* serves the limited purpose of ensuring a defendant's due process right to a fair trial. *United States v. Coleman*, 862 F.2d 455, 458 (3d Cir.1988). The Tenth Circuit has similarly stated that "the most an invocation of *Brady* could accomplish would be the ordering of a new trial in which the withheld information is fully disclosed." *United States v. Davis*, 578 F.2d 277, 280 (10th Cir.1978). Here, Lewis already has the very remedy that *Brady* prescribes, a second trial. *See id.* Any evidence that the prosecution allegedly withheld is now known and available for trial.

■ Barring a retrial for the prosecution's alleged intentional *Brady* violations would be an unnecessary expansion of the Double Jeopardy Clause. Courts have authority to police a prosecutor's ethical misconduct. *See United States v. McClintock*, 748 F.2d 1278, 1285–86 (9th Cir.1984). They can dismiss actions where government attorneys have "willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice."[5] *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 912 (9th Cir. 1986). Thus, courts can remedy intentional misconduct without expanding the scope of *Brady*.

The record here does not suggest prosecutorial misconduct, and Lewis does not merit relief on these grounds. As the district court noted, Long's testimony about the alleged weapon was "all over the board." Long consistently testified before trial that no such weapon existed. Only after trial did Long testify about a possible weapon. Long's testimony regarding the prosecutor's instructions was similarly inconsistent. While he blamed the prosecutor for dissuading him from mentioning the razor blade earlier, Long also stated that no agent or prosecutor ever told him to lie. Concerning the other correctional officer's testimony, the Government had

---

5. To justify dismissing an action for prosecutorial misconduct, "the government's conduct must have caused substantial prejudice to the defendant and been flagrant in its disregard for the limits of appropriate professional conduct." *United States v. Lopez*, 4 F.3d 1455, 1464 (9th Cir.1993).

fully disclosed her name and position to the defense before trial. The guard did not witness the fight or shooting.

■■■■ We note an additional problem for Lewis's double jeopardy claim. Double jeopardy ordinarily does not apply if a defendant obtains a mistrial. Courts presume that the defendant, in seeking a mistrial, gives up his or her right to a verdict by that jury. *See United States v. Tateo,* 377 U.S. 463, 467, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964). A narrow exception to this "motion for mistrial" rule exists where the government engages in prosecutorial misconduct "intended to provoke the defendant into moving for a mistrial." *Oregon v. Kennedy,* 456 U.S. 667, 679, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). This exception prevents prosecutors from sinking a case they knew was doomed to end in an acquittal in the hope of having better luck before a second jury.

■■■■ Here, Lewis does not allege that the prosecution provoked him into moving for a mistrial. The case, in fact, went to the jury; Lewis did not learn of the alleged misconduct until after he overturned his conviction on appeal. We have not directly addressed whether the Double Jeopardy Clause applies in such a case.

Other circuits, however, have declined to broaden the scope of the Double Jeopardy Clause in this fashion. The Tenth Circuit, for instance, noted that "without the declaration of a mistrial, [defendants are] not deprived of their 'valued right' to have their case submitted to the first jury." *United States v. McAleer,* 138 F.3d 852, 856 (10th Cir.1998). Furthermore, prosecutors engage in covert misconduct "to win at trial—not to force a second go-around in

a complicated, expensive, lengthy and resource-depleting trial." *United States v. Doyle,* 121 F.3d 1078, 1087 (7th Cir.1997); *see also Jacob v. Clarke,* 52 F.3d 178, 181 (8th Cir.); *United States v. Zuno-Arce,* 25 F.Supp.2d 1087, 1114–15 (C.D.Cal.1998) (concluding that "setting aside the jury verdict" is not the functional equivalent of a motion for mistrial under *Kennedy* ).

We are aware that the Second Circuit has surmised, in dicta, that the Supreme Court "might think" that the Double Jeopardy Clause protects a defendant from retrial in instances other than after successful motions for mistrial.[6] *See United States v. Wallach,* 979 F.2d 912, 916 (2d Cir.1992). The Second Circuit warned, however, that any such expansion of *Kennedy* would have to be narrow, as prosecutors design every action to prejudice the defendant. *Id.* Any such expansion, the court theorized, would be appropriate "only where the misconduct of the prosecutor is undertaken, not simply to prevent an acquittal, but to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct." *Id.*

Several subsequent cases have referenced the reasoning in *Wallach.* None, however, concluded that the relevant prosecutorial misconduct was sufficiently egregious to bar a retrial. *See, e.g., United States v. Gary,* 74 F.3d 304, 315 (1st Cir. 1996) (holding that no deliberate prosecutorial misconduct existed after the first trial ended in a hung jury); *United States v. Pavloyianis,* 996 F.2d 1467, 1473–75 (2d Cir.1993) (concluding that no prosecutorial misconduct existed to warrant an expansion of *Kennedy* as suggested in *Wallach* ).

**6.** After speculating that prosecutorial misconduct designed to avoid acquittal might justify such an expansion, the court concluded that the case then before it did not involve the type of deliberate misconduct that might invoke a double jeopardy bar to retrial. *Wallach,* 979

F.2d at 917. Specifically, the court concluded that there was no evidence that the prosecution anticipated an acquittal or that the prosecutors purposely elicited untruthful testimony about the defendant. *Id.*

The California Supreme Court adopted the reasoning in *Wallach* but, in doing so, explicitly noted that "we need not, and do not, determine whether *Wallach* . . . articulates a proper test—under either the federal or state constitutional double jeopardy clauses—for misconduct that results in *reversal on appeal*." *People v. Batts*, 30 Cal.4th 660, 694, 134 Cal.Rptr.2d 67, 68 P.3d 357 (2003) (emphasis in original). Similarly, Lewis makes no showing that the prosecutors deliberately engaged in misconduct in order to secure a second trial. Thus, even if Lewis were able to raise a double jeopardy claim, the alleged prosecutorial misconduct here is not sufficient to bar a retrial.

Lewis has received one of the remedies that *Brady* envisions, a new trial. The prosecution's alleged *Brady* violations in this case simply do not implicate the Double Jeopardy Clause or otherwise bar his retrial. The district court thus did not err in rejecting Lewis's double jeopardy claim.

### CONCLUSION

We DISMISS Lewis's fair warning claim for lack of jurisdiction. Although we have jurisdiction over his double jeopardy claim because it raises a colorable claim, the substance of that double jeopardy claim lacks merit. We therefore AFFIRM the district court's denial of Lewis's motion to dismiss with respect to the double jeopardy claim.

**DISMISSED**, in part, and **AFFIRMED**, in part.